### *Ex parte* WM. SIMONTON et al.

**1.** The Supreme court does not possess original power to award a writ of *habeas corpus.*

Petition for *habeas corpus.*

The petitioners, by their counsel, submitted a petition to this court, in which they state, that at the Spring term, eighteen hundred and thirty-nine, of the Circuit court of Tuskaloosa county, they were severally arrested on writs of *capias*, issued out of that court, founded on an indictment for murder, preferred by the grand jury of that county. That the petitioners were arraigned, and each for himself pleaded *not guilty*, and announced themselves ready for trial, and the Attorney General being enquired of by the court, made a similar avowal on behalf of the State—notwithstanding which, they were remanded to, and are still confined in the jail of Tuskaloosa county.

The petitioners further stated, that in pursuance of the statute in such case provided, they did, on the last day of the term of the court, apply thereto to be discharged on *bail*, which application was denied ; and protesting their innocence of the offence wherewith they are charged, they pray that a writ of *habeas corpus* may be awarded, requiring their bodies to be brought before this court, "in order that their right to be admitted to bail, in pursuance of the statute, may be considered."

The counsel for the petitioners also laid before the court, a transcript of the proceedings of the Circuit court, which contained their indictment for *murder*, a statement

of their arraignment, and plea of "not guilty;" and that subsequently, during the same term, an entry was made upon the application of the petitioners to be admitted to bail, in these words:

"The State of Alabama vs. Henry S. Simonton and others.—This day came Lincoln Clark, Esquire, Attorney General, as well as the prisoners, by their attorneys, and it appearing to the satisfaction of the court, that when this prosecution was regularly called, at the present term of the court for trial, the State, by the Attorney General, announced itself ready for trial, and the prisoners, in their own proper persons, also announced themselves severally ready for trial,—all the other business of the court having been disposed of, and the court about to adjourn, when the court determined, that inasmuch as the presiding judge is a relation, by consanguinity, to the person with whose murder the prisoners stand charged, the trial of said prisoners, or any one of them, cannot proceed, but that the same be continued until the next term of this court.

"The prisoners, by their attorneys, moved the court, now here, for their several discharge and releasement from further confinement, on account of said prosecution, for the reasons set forth above, on each of said prisoners entering into bond and security, in such amount as said court may direct, for their several personal appearance, at the next term of this court; whereupon, the court declined to decide upon their right to bail, for the same reason he had previously declined to preside in their trial in chief."

Ex parte Wm. Simonton et al.

*Porter,* for the petitioners.
*Attorney General,* contra.

COLLIER, C. J.—A preliminary question has been raised by the Attorney General, which must be disposed of, before we consider the merits of the application of the petitioners. It is this: Has this court the constitutional right to award a writ of *habeas corpus* on the case, as disclosed by the record?

By the second section of the *fifth* article of the consti-tution of Alabama, it is declared, that "the Supreme court, except in cases otherwise directed by this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the State, under such restrictions and regulations, not repugnant to this constitution, as may, from time to time, be prescribed by law: Provided, that the Supreme court shall have power to issue writs of injunction, mandamus, quo warranto, habeas corpus, and such other remedial and original writs, as may be necessary to give it a general superintendence and control of inferior jurisdictions."

The exception introduced into the first part of this *section,* was not intended to apply to any particular provision of the constitution, but was inserted *ex majore cautela,* so as to place beyond doubt, the operation of every part of that instrument, with which the restrictive terms of the section come in conflict. In this view, it was unnecessary, for if the "Supreme court" was vested with jurisdiction other than appellate, in any part of the constitution, its exercise would not be considered as inhibited by the limitation imposed in the section before us. The

9 P                    49

constitution must be considered as a whole, and efficiency given to every portion of it, where it is practicable. It cannot be supposed that any clause is intended to be without effect; and such a construction is inadmissible, unless the words require it. If there is nothing upon which the exception can operate in other parts of the constitution, it clearly cannot enlarge the meaning of the *proviso* in the same section ; and if such be the case, it must be regarded as entirely powerless, either for the purpose of extending or limiting jurisdiction.

Had it been intended that the exception should refer particularly to the *proviso*, it would have been quite easy to have employed terms, thus directing its application— instead of saying, " except in cases otherwise directed by this constitution," the convention might have said, *except in the cases excepted by the proviso to this section*, or they might have used other language, so precise as not to have left their meaning to be ascertained by the uncertain rules of construction.

Let us, however, suppose for a moment, that the exception points directly to the *proviso*, and still it would be inoperative. There is no place we could assign to it there, that will enlarge the meaning of the section : if "except" were substituted for "provided," there would be a mere variation of phraseology, without a change of the sense. But it is insisted, that the exception may apply to the " power to issue writs of injunction, mandamus, quo warranto, habeas corpus;" that the " other remedial and original writs," not specifically defined, are to be controlled as to the purpose for which they are used by the latter part of the *proviso*. This argument cannot

Ex parte Wm. Simonton et al.

be maintained upon any rule of construction, of which we are cognizant. The *proviso* is but an entire sentence, and the writs designated, are only named as examples, or rather to illustrate the meaning intended, more clearly, than could be done by the employment of general words. The " other remedial and original writs," mean writs of a kindred character, or to effect a kindred object, viz., to give to the " Supreme court a general superintendence and control of inferior jurisdictions." That this qualification was intended to operate in restraint of all the power conferred by the *proviso*, we think will not admit of serious disputation. If it had been intended to distingnish between the writs expressly mentioned, and those generally referred to, language appropriate to such a distinction, could have been easily introduced, and its absence is a strong persuasive proof, that nothing of the kind was intended. In fact, the meaning of the *proviso*, in this respect, is so clearly indicated, that we find the entire sentence connected by the insertion of the copulative conjunction " and," immediately after " *habeas corpus*"—had it been inserted between " *quo warranto* " and " *habeas corpus*," the argument, that the *proviso* intended to embrace two distinct classes of cases, may have rested on higher ground.

This court, then, does not possess the constitutional power to award the writ, which the petitioners have asked for, unless it be " to give it a general superintendence and control of inferior jurisdictions." To bring a case within these qualifying terms, it should be shown, either that some court, or that some judge of a court, invested with authority to act in the premises, has under-

taken to decide upon the case of a party aggrieved, or else without any just cause therefor, has refused to entertain the same. In the case before us, the court declined acting upon the application of the petitioners for bail, alleging as an excuse, that the presiding judge was connected by *consanguinity* with the individual, whom they were charged with having murdered. What was the relationship between the judge and the deceased, the record no where informs us, but we must intend it to have been such as justified the refusal.

It was argued for the petitioners, that the judge had no discretion; that it was his duty to have allowed the petitioners to have been tried, or bailed. We think this argument cannot be maintained. It is clearly competent for the Legislature to compel a judge to forego the exercise of delicacy in such a case, and declare it his duty to sit at the trial of the man who has even killed his brother ; but a statute, to have this effect, must be so express and unequivocal, as to take away all ground for construction. A juror, related as the judge seems to have been to the deceased, would doubtless have been an incompetent trior, and shall not a judge, who may exert a greater influence upon the fate of the accused, be allowed to challenge himself, for a cause which disqualifies a juror? The question, in our opinion, furnishes its own answer.

The same cause which authorised the judge to decline the trial of the petitioners, also excused him from passing upon their application for bail. There, an exercise of judgment was necessary to determine the sums in which bail should be respectively required of the petitioners, and the sufficiency of the securities offered.

Ex parte Wm. Simonton et al.

But little inconvenience could have resulted to the petitioners, by the refusal of the Circuit court to allow them *bail*, as they could have applied immediately to another judge of the Circuit court, at chambers, who would have been bound by duty to have considered their application. Had this course been taken, and bail been denied them, then their case would have come regularly before us, for revision upon its merits.

This not being the true state of the case, but the petitioners' application not having been decided upon by a judge, or a court of primary jurisdiction, or a decision refused under circumstances affording no just cause for the refusal, the prayer of the petition must be denied.