Mr. Justice Scott delivered the opinion of the Court. By the act of the legislature of the 21st December, 1846, (Digest, p. 313, sec. 12) appellate jurisdiction was granted to the circuit court from all orders and judgments of the county court in all cases not exclusively restricted to the jurisdiction of that court nor prohibited by law. The 'capacity of the circuit court to be in vested, with such j urisdiction and the constitutional power of the legislature to grant it was settled by the case of Miller vs. Heard & Co., (1 Eng. 73.) The grant thus made was absolute and its rightful exercise was in no way necessarily dependent upon future legislative regulations although all such were at the legislative will. It was then but an.additional investiture of judicial power in the circuit court to be exercised by means already provided to give effect to the powers of that court, and if these were not commensurate, then by such additional means known to the law as were necessarily granted as an incident to the appellate powers granted. (Moore vs Woodruff, 5 Ark. 215 and cases there cited as to this point.) -Doubtless therefore the circuit court has ample power in order to carry this appellate jurisdiction into effect to issue any necessary and appropriate writ known to the law and to make such incidental order as might be appropriate to secure costs and the interests of the parties litigant. In general the writ of certiorari, with or without a supesedeas clause, according to the circumstances of each case, grounded upon petition sustained by accompanying exhibits and granted upon such conditions for the security of costs, the prosecution of the appeal and for the proper indemnity of the adverse party, as in the judicial discretion of the court or judge, to whom the application for the appeal is made, may be deemed proper, would be the most appropriate means to be adopted. This process would bring up the appeal to the circuit court, temporarily superseded or not according as the supesedeas clause had been inserted or omitted in the writ of certiorari, to be there quashed and remanded for further proceedings, or affirmed and remanded that the county court might execute its own judgment, in case pending the appeal the execution had been superseded. The circuit court rendering no other judgment than a general judgment of quashal or affirmance and for costs in that court, for which the bond required is a security. We are aware that in several of the States the practice has-been adopted of giving a new trial (de novo) in all cases removed by certiorari after judgment from an inferior into a superior court, but this does not seem warranted by the uniform course of practice in England. There, when cases are thus removed before judgment in the inferior court, the proceeding is de novo, so that if the case is at issue when removed the plaintiff must declare do novo. (Tidd’s Practice, 349, 350.) But there is no warrant in the practice of the English courts for a trial de novo after judgment in the inferior court, and this is doubtless the foundation of the practice long established in this State, to take no other action in such than to quash or affirm, (County of Pulaski vs. Irvin, 4 Ark. 487) regarding the process when running to a court moving in a new course different from the common law as performing the same functions as a writ of error running to one moving in the course of the common law. Groenvelt vs. Barwell, 1 Salk. 263. The use of the writ of certiorari as to such appeals from the county court will in no way conflict with the decision of this court in the case of Levy ad. vs. Lyschinski, (3 Eng. 113) because this would not be a use of that writ in virtue of the power of superintending control vested by the constitution in the circuit court, but would be such one in virtue of pure appellate powers vested in the circuit court by the statute. (Digest 313, sec. 12.) But although it might directly conflict with that decision we would not the less indicate the use of the writ to the circuit court. Because we feel clear that that decision is founded upon a radical misconception of ihe true character of the powers of superintending control over county courts and justices of the peace, which by the constitution is vested in the circuit courts. And so long as it shall be regarded as law and the doctrine upon which it is founded as a true constitutional doctrine that these tribunals will continue to be unlawfully prohibited from the use of their most efficient powers for effectuating the superintendency that as to them was designed to be set on foot by the framers of the constitution : which was, as we think, beyond all doubt, a superintendency and control of precisely the same character, though not to the same extent, as that which has been exerted in England by the court of King’s Benchfor many centuries. Feeling as sure that when the framers of the constitution used the terms “ superintending control over the county courts,” &c., they used these terms in their common law sense as when, in a subsequent part of the constitution they used the terms “ all writs and other process” that they were used in that sense. And consequently it would be as unwise to look any where else than to the common law for the meaning of one of these terms as for the other. And in either equally, as unwise as it would be to look by the light of reason alone for the meaning of the word “ Christian” in a Pagan land, where Christiany had never been planted, instead of looking in a Christian land in the light of Holy Writ. That misconception consists in the supposition (based simply upon the foundation that there is nothing in express terms in this connection which embraces “ parties litigant” and “ cases pending”) that these powers of superintendency and control are purely and exclusively powers of original jurisdiction having no connection with parties or cases, butrelate altogether to tribunals; and consequently that these or the incumbents of them must necessarily be made the defendants in any proceedings set on foot under these powers. No authority or known principle has been cited for this supposition, and no reason advanced for its support other than that mentioned, and that, it must be conceded, is any thing but satisfactory ; because if allowed alike sway as to all the powers of the supreme court as expressed in the constitution, most if not all these would have to be confined to tribunals only, and would have but little to do with “ parties litigant” or“ cases.” The very generality of the terms themselves “ superintending control,” would seem utterly to exclude the idea of a restriction to only one class of powers : much less, a restriction still farther that this class should be exerted only upon tribunals and should not be exerted upon parties and cases. And indeed it is difficult to concieve how powers of original jurisdiction only are to be made efficient against tribunals when “ parties litigant” and “ cases” are left out of view. Doubtless to some extent one tribunal may act upon another through the instrumentality of process running to the tribunal only and by this means exert control; still such exertion of control must in the nature of things be predicated upon some case upon which there has been action or refusal of action. But although control thus in reference to “ parties litigant” and “ cases” may be thus exerted to some extent by process running to tribunals or the incumbents, this by no means proves that a similar control may not be exerted by a direct action upon the case itself and the parties, and that in some cases such might not be indispensable to the exertion of control itself. When a case had not passed beyond the powers of a subordinate court it might undo its erroneous action, but when beyond this boundary it is difficult to see how it could be merely stimulated to do, in virtue of its own powers, an act which it has no power or authority to do. To effect control in such case, action by the superior court either upon the case itself or upon the parties litigant would be indispensable. Accordingly the superintending control of King’s Bench over subordinate tribunals has never been confined to that which alone could be effected by process running directly to the tribunal, but in much the larger number of cases by judicial action npon the case itself and upon the parties: and the writ of certiorari, which has been heretofore disallowed to our circuit courts under the doctrine we are combating and the decision founded upon it, has been the most usual instrumentality of effecting this control. In the case of The King vs. Reeves, Morris, Osborn et al. (1 Black. R. 231) Lord Mansfield said, “ But this court hath an inherent power to issue certiorari in order to keep all inferior courts within due bounds, unless expressly forbid to do so by the words of the law. If the justice had done right below you may show it and quash the certiorari. But if there be the least doubt this court will grant the writ.” The true distinction upon this subject, as will be manifest by an examination of various cases where King’s Bench has from time to time exerted its superintending control over subordinate courts, is that these powers of superintending control, so far from being all powers of primary and original jurisdiction, are for the most part in their essence arid nature revisory powers, as well over cases as over tribunals and are to be exerted as well upon the one as the other, according to the exigency of the matter to be controled. (See dissenting opinion as to this point in the case of Amour Hunt, Ex parte, 5 Eng. 288. 1 Tidd’s Pr. 333, 334.) Accordingly the supreme court of Alabama has held in various cases, and shown by judicial action upon cases presented under precisely such an investiture of powers of superintending control as to that court, as is by our constitution not only made as to our supreme court, but also as to our circuit courts, that such of these powers as are powers of original jurisdiction will never be exerted unless there is no subordinate court competent to administer justice by reason of some inherent defect in the tribunal or incompetency of the incumbent: while the great mass of their powers which are in their nature revisory are ever ready to be exerted either upon tribunals or cases, to keep subordinate tribunals in due bounds whenever they act beyond their power or refuse to act at all. Simonton, Ex parte, 9 Porter 383. Mansong, Ex parte, 1 Ala. R. 98. The State vs. Williams, ib. 342 The same vs. Porter, ib. 688. Tarlton, Ex parte, 2 Ala. R. 35. Chaney, Ex parte, 8 Ala. R. 424. Grant, ad. vs. McCord, 6 Ala. R. 91. Doubtless, however, the powers of superintending control, designed as they are only to keep subordinate courts in due bounds, should rarely if ever be exerted either by the circuit courts over the county courts and justices of the peace, or by the supreme court over the latter, otherwise thau in harmony with ordinary appellate jurisdiction as regulated by law: and therefore before final judgment nothing short of a clear defect of power in the subordinate court or clear breach of duty and irreparable mischief by delay should make a case for interposition; otherwise the extraordinary .powers of superintending control would conflict with and in effect supersede the ordinary appellate jurisdiction as regulated by law. In the light of these views then, entertaining no doubt as to the erroneous character of the doctrine, as to the point examined, promulged in Ex parte Anthony (5 Ark. 363, 364) and applied in the case of Levy as ad. vs. Lyschinski (8 Eng. 113), the rule as to that doctrine and the latter case must be overruled, that the circuit courts may resume the exercise of the constitutional powers as to a superintending control over the county courts and over justices of the peace, and that citizens may have justice in matters within the cognizance of these tribunals without the expense and delay of a direct resort to this court. But as to the case before us, although it was within the range of the appellate jurisdiction conferred upon the circuit court by the act of 1846, first referred to, and might have been brought up for adjudication by writ of certiorari in the manner indicated, in virtue of that appellate jurisdiction thus conferred or in like manner in virtue of the superintending power of the circuit court, it seems from the record to have been otherwise brought before the circuit court. The record shows that an appeal was prayed of the county court and was granted in the manner pointed out by the act entitled “ An act allowing appeals from the county and probate courts,15 approved the 4th January, 1849, Pamphlet Acts of 1849, page 59. The legal effect of this act is simply to provide an additional mode by which the cases specified in it may be taken within the influence of the appellate jurisdiction of the circuit court that had been conferred by the act of 1846, and by no means excludes the more efficient mode already within the effective power of the circuit court; nor does it in any way indicate the mode of trial in the circuit court of a case thus removed otherwise than by the use of the term “ appeal,” which is more particularly a term of the civil than the common law. Nor can it be supposed that this act conferred on parties a right of appeal that before did not exist, although appellate jurisdiction as to such cases was vested in the circuit court. Because the right of appealing to the courts of justice both of original and of appellate jurisdiction for the redress of injuries is one of the fundamental absolute rights of the citizen; and consequently when a new court is opened or when additional jurisdiction is conferred upon one already open, the citizen has a right to resort to it if his case is within its jurisdiction, without any affirmative legislation to confer such a right upon him, anything that may seem to be to the contrary notwithstanding in the case of Hays vs. Pope county, (5 Ark. 308.) Becacse “ since the law is the supreme arbiter of every man’s life, liberty and property, courts of justice must at all times be open to the subject and the law be duly administered therein. The emphatical words of Magna Charta spoken in the person of the King, who, in judgment of law (says Sir Ed. Coke) is ever present and repeating them in all his courts are these: nulli venclemus, nulli negabinvus, cmt dijferemus rectum veljustitiam.” As the record shows that the terms of the last mentioned act was complied with and the case was regularly certified into the circuit court and two motions therm, entertained ;■ the first of which was refused and the second- granted, the only question that can arise as to the validity of the appeal is whether or not the case was one of those embraced by the second section of the last cited act. The term “ allowances,” from an order or judgment making or refusing to make such, an appeal is granted, is an indefinite one; yet in the connection in which it is used in this statute it evidently has a direct relation to fiscal matters. Because it is known that one of the most important functions of the county court has a direct relation to the fiscal concerns of the counties respectively and the State, being entrusted by the constitution with all matters relating to county taxes, the disbursement of money for county purposes and with all matters touching the internal improvement and local concents of the county, and by the legislature with various matters touching the assessment and collection of the State revenue, and -with all matters of settlement and allowances with sheriffs and other officers touching the assessment and collection of county revenue, and with a great variety of matters touching claims and charges upon the county treasury. Thus the county court, under our polity is the fiscal court and has a very general jurisdiction as to these concerns ; and it would seem evident that the term “ allowances,” from an order or judgment making or refusing one, an appeal is to be granted, relates to these concerns ; but what fiscal matters it embraces and what it excludes is by no means certain. It does seem clear enough,.however, that it was used in some general sense; because it authorizes an appeal from all action of the county court, whether in favor of or adverse to any application for an allowance made by any person whomsoever and whether that action be in the form of an order or of a judgment of that court. The subject matter of an allowance, in the sense of the statute, must necessarily then embrace within Sits scope what may be the subject matter of a judgment as to the fiscal affairs committed to the jurisdiction of the county court, and in doing so seems inevitably to embrace all judgments that presuppose and include any action of the court granting or refusing an allowance against the revenue or the treasury. And this seems to exclude the idea that, in such cases, separate appeals would lay as to each item allowed or disallowed in the investigation and judicial adjustment of matters that would result in an aggregate balance and be the foundation of a judgment; because such would be so contrary to the known principles of the common law and practice of the common law courts that it could not have countenance unless founded upon clear and distinct legislative enactment to this effect. In the light of these views then and feeling fully authorized by law to give this statute a liberal construction, because it is a statute purely remedial and is evidently designed to advance the right of appeal which is clearly included in the general “right of applying to the courts of justice for the redress of injuries,” which, as we have already remarked, is one of the fundamental absolute rights of the citizen, we hold that the term “ allowances” as used in this statute embraces two distinct classes of cases: 1st. cases where orders of allowance are made or refused touching claims against the county or its treasury and the action of the court is confined to such allowance or refusal to allow : 2d. cases where judgments have been rendered touching fiscal matters in the grounds of which are included any allowance or refusal to allow any such claims. The former would embrace the ordinary claims of individuals against the county or its treasury which the court would simply have to order to be paid or to refuse such order: while the latter would embrace settlements with officers chargeable with or holding moneys payable into the county treasury who might have claims touching services, fees or other matters to be allowed to them by way of deduction or set-off, and the balance found to be due liable to be finally matured into a judgment under .the statute. And these two classes would seem to embrace all final orders or final judgments of the county court made in its character of fiscal court except those in which appeals are “ prohibited by law or are exclusively restricted to the jurisdiction of the county courts.” Under this construction of the statute it is clear that, in the case before us, the appeal was regular. This case then being regularly before the circuit court, the next question is, how was it to be disposed of? The statute is altogether silent upon this subject. - It is insisted however that, as the civil law term “ appeal” is used, we must apply the same rule of construction that we have already applied in this case to the terms “ superintending control,” and thus derive an unqualified trial de novo. This doubtless would be a correct position if the term “ appeal,” .as used in this statute, was an entirely new ■one in our jurisprudence, but that is by no means so , and therefore our course of legislation in reference to this term and our course of judicial decision must essentially modify the application of the rule invoked. So far as inferences are to be drawn from our course of legislation they are any thing but in favor of the construction that the term appeal necessarily imports a trial de novo upon the merits; because the provisions of every statute passed wherein this term has been used is inconsistent with such a construction. Nor has our course of judicial decision given any countenance to such construction. And in our system, in reference to this state of things, doubtless the true doctrine is that appeals in reference to actions at law, although expressed by a term originally derived from the civil law, are purely creatures of our statute law, and consequently that our various statutes must be construed together in order to determine correctly the import of the term in any given statute. When the term is used in the statute providing for the removal of cases to this court it is conceded that it does not import a trial de novo; but it is insisted that that proves nothing because this is an appellate court, yet this is not a conclusive answer because this court, besides its appellate power, has uniformly exercised original jurisdiction in a variety of cases. Nor does it import an unqualified trial do novo, when used in the statute provided for the removal of cases from the probate to the circuit court. It does, however, by the affirmative provisions of the statute, import such trial when used in the statutes providing for the removal of cases from the courts of justices of the peace to the circuit courts. It has then no uniform import as to the mode of trial in our system, whatever may have been its technical import in the civil law from whence it is derived; and to give it the civil law import as to this would be to hold the common law pro tanto repealed. Under this state of things we shall adopt, as the most reasonable construction, the import of the term, as to the mode of trial, that is fixed by the provisions for removing cases from the probate to the circuit court, and that is a trial de novo upon the merits, after it shall have been first ascertained by the circuit court on inspection of the record that the county court had erred in some material matter of law or fact. And this mainly because in appeals from the probate court like those appeals no bond is required for the indemnity of the adverse party as is required in appeals from justices of the peace, where the right to trial de novo is absolute. The distinction resting in this, that a judgment regularly obtained shall not be nullified or in legal construction become inoperative as a judgment until either ample security be given for its amount or else a material error in it of law or fact be first judicially ascertained. This seeming to be the discriminating line kept' in view by the legislature between an absolute and a qualified trial de novo : and this will be the result under the construction that we have given as to the import of this term in regard to the mode of trial. Because under this construction, until the circuit court shall judicially ascertain from the face of the record sent before it that a material error, either in law or fact, had been committed by the county court, the judgment will remain in full force and its execution would be not even stayed unless upon a proper case the circuit court should have interposed upon terms of ample security to the adverse party and superseded its execution until the case could be heard. And thus the judgment of the county court would remain on the same footing as a judgment of the probate court appealed from would rest; the law in such case staying the execution which could only be effected as to judgments of the county court in the manner indicated. But in neither case would the appeal invalidate the judgment untill after the ascertainment of material errors and the consequent award of a trial de novo upon the merits. In this view of the case before us then we will proceed to examine the face of the record to ascertain if there be any such errors as would authorize the award of a trial de novo. The first objection urged by counsel is that Carnall does not appear to have been present when the county court went into the settlement in which he was concerned at the April term, 1850. This objection is untenable according to the views of this court expressed in Trice vs. Crittenden county, (2 Eng. at p. 102) in which views we fully concur, because that was but a preliminary proceeding not unlike the act of an individual stating an account against his debtor preliminary to the institution of a suit; against him. The next objection is that such a settlement could have been lawfully made only at the November term annually and Lawson’s case (3 Ark. R. 8) is cited as authority for this position. This objection is alike untenable as was also ruled correctly, we think, in the case of Trice vs. Crittenden county (at page 164) ; because the rule has no reference to a delinquent officer, who may have failed to settle his accounts at the time prescribed by law. And therefore in the case of such delinquency the preliminary settlement may be made at any subsequent term. In the case before us the record distictly shows that there had been a failure to settle at the preceding November term, and therefore the settlement at the following April term was regular. It is then objected that the judgment was rendered by an incompetent court, because it appears by the record that one of the regularly elected associates-was disqualified by law to pass upon the case, and another justice of the peace in and for the county was summoned to take his place, and the cause of Trice vs. Crittenden county (at p. 164) and the case of Pulaski county vs. Lincoln (4 Eng. 320) are cited as authority for this position. These authorities certainly do not sustain this objection. In the first at page 164 it is distinctly stated that “ It requires the presiding judge and two justices of the peace to constitute a court for the transaction of business but it is nowhere intimated in that case that these two justices must necessarily be regularly elected associate justices. On the contrary, so far as inference of that may be drawn it is directly to the contrary of this, because the incompetency of the court in that case was put entirely upon the ground that the record showed no one else present but the presiding judge. And besides, in the case of Ferguson vs. Crittenden county (1 Eng. 476) it was expressly held that even in the absence of the presiding judge, a majority of the justices of the county would constitute a competent court. Nor does the case of Pulaski county vs. Lincoln contradict any of these doctrines, because it will clearly appear that by the expression used in that case, “ We have seen that it required the presiding judge and two associate justices to constitute a legally organized court,’’ that the term “ associate” was there used in its common and not its technical import and pointed directly to the statute that had been literally quoted in the second preceding page (p. 324), providing that “the presiding judge of the county court and any two justices of the county shall be a quorum to transact business.” Then there is nothing in the objection of counsel as to the incompetency of the court which rendered this judgment. It is next objected that the error of $18, in favor of the appellant specified in the record as an error relating to the treasurer’s receipt is not deducted out of the balance found against him, and that this error is multiplied by the succeeding charge of 25 per cent, penalty and 50 per centum per annum interest adjudged against Carnall. This is a mistake of counsel in point of fact which no doubt has been fallen into unintentionally and is grounded perhaps upon an erroneous recital in the process of summons that went out and was executed upon Carnall as to the amount claimed. The record shows distinctly that the $18 were deducted, and that it was only upon the balance that the 25 per cent, penalty was charged and the judgment of the court is in accordance with this. It is next objected that the appellant is charged with the “ amount of the tax book as per assessment list filed” &c., and insisted that this is not sufficiently explicit; because such a charge does not exclude the idea that he may not have been charged with the amount assessed for the State as well as for the county. It seems to us that this objection would be equally applicable to almost every item of the settlement; and if held good, could only be so upon the ground that we would presume against the county court. So far from doing this we feel bound to presume in favor of the correctness of its doings inasmuch as its jurisdiction over the subject matter is manifest by the record. The last objection to the proceedings in the county court is that interest at the rate of ftity per centum per annum is adjudged upon the aggregate of the sum found due and the penalty of twenty-five per cent, for failure to pay it within ten days; when, as it is insisted the interest should have been adjudged only upon the amount due exclusive of the penalty. And to sustain this, it is contended that the provision of the statute, which seems] to authorize this judgment upon the aggregate of the sum due and the penalty, is not so entirely explicit as to exclude any possible intendment to the contrary and therefore as such a construction will operate penally in a high degree, it should be otherwise construed. It may be considered that these are highly penal provisions and that the language does not absolutely exclude a possible intendment to the contrary; but we think, when the entire section is read together, there can be no ground at all for doubt but that the legislature did actually enact precisely as the court enforced, and the power to do so cannot be questioned. And besides this a mere possible intendment to the contrary is fully repelled by the subject matter of the enactment and the public policy obviously designed to be subser-ved, that of securing a prompt collection and payment over of the public revenue. We are satisfied therfore that there is nothing in this objection. We have also considered another question and that is whether the 25 per cent, penalty could be rightfully charged against the appellant before he had been notified of the settlement and thus had an opportunity'to pay within the ten days : and have concluded that it was regular to do so, as this was but a part of the preliminary proceedings that may be lawfully conducted Ex parte: and that any objection for want of such opportunity should have come from him at the succeeding term when summoned to show cause why judgment should not be rendered against him for the amount due, together with the penalty; and if want of knowledge of such settlement had been shown by Mm as to the penalty and had been disallowed, he should have spread that upon the record by bill of exceptions, as he might do of a refusal of a trial by jury if demanded by him and refused by the county court. Finding then upon the face of the record no material error of law or fact in the doings of the county court, in our opinion the appellant was not entitled to have this case tried de novo in the circuit court. Nor were there any grounds for a quashal of the proceeding in the county court and therefore there was no error in the refusal of the circuit court to grant the motion to quash. But there was manifest error in the dismissal of this case from the circuit court, because, instead of this action by that court there should have been a general judgment of affirmance and also a judgment for the costs in the circuit court against the appellant, the bond for cost s executed in the county court to stand as security for the satisfaction of such judgment for costs. Therefore the judgment of the circuit court striking this case from its docket and dismissing it from that court must be reversed and the cause remanded with instructions to render a general judgment of affirmance and also for the costs of the appeal against the appellant.