Mr. Justice Scott delivered the opinion of the Court. This application is for the exercise of original jurisdiction. The essential criterion of appellate jurisdiction is, that it revises and corrects the proceedings in a cause already instituted, but does not create that cause. (Marbury v. Madison, 1 Cranch 137.) But this is for relief here primarily, no application having been made previously to any other court of justice. And necessarily involves the question whether or not this court has jurisdiction— in other words, rightful authority and power to entertain the application and accord the relief asked for. A question which, until some two years ago, was considered settled, but which we have since considered it to be our duty to reconsider. If this court has rightful jurisdiction in cases like this, it must be found expressed in the constitution or derived by a just and necessary implication from the expressions used in that instrument. Because it was by that instrument that the State government was instituted, its departments created and the powers to be exercised by each defined and distributed. Many of the regulations established by this instrument are so distinctly and clearly expressed that there is no place for doubt, nor necessity, nor warrant for construction to derive the true intention of its framers, when the subject matter and the language used are considered in connexion with known political truths or established common law institutions then obviously in the minds eye of these law-givers. As that the powers of the government should be divided into three distinct departments, when considered in connexion with the known political truth that this was necessary, no less for the security of public liberty than private rights ■ — a truth that had been so proclaimed and enforced by some of the most wise and eminent men of this and of other countries; and was besides, then, in the fall tide of successful experiment in all the sister States as well as in. the federal government. So, also, of the regulation that the judicial power of the State should be vested in certain specified courts, when considered in connex-ion with the then existing common law institutions for the dispensation of justice. And there are many other regulations that, by like means, are of the most clear and exact conception; and yet all of them perhaps might justly present the most ample ground for discussion and legitimate foundation for contrariety of opinion, if considered even by the most enlightened minds unconnected with each other, and with the political truths and legal ideas, which we can but know from signs natural and probable were in the minds eye of their authors when they put them forth. But although this is the characteristic of these regulations, there are others upon which the light from without does not shine so strong and clear; and yet in no case does it entirely withhold its aid, and leave us to be guided alone by that which is emitted from within. Nor is it, in any case, safe to shut our eyes to either, when we regard any portion of the constitution, or to suffer common sense to be in any degree enveigledby the mysteries of learning. Because constitutions “are instruments of a practical nature, founded upon the common business of human life, adapted to common wants, designed for common use, and intended to be fitted to common understandings. The people make them; the people adopt them; the people must be supposed to read them with the help of common sense and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss.” {Story on Const.) Nor can any single part be safely regarded even in this manner when determining its functions, otherwise than in connection with every other part; because all. these were designed to constitute but one practical and harmonious whole, not only when united, but when in separate action. Thus, when determining upon the nature and limits of the judicial functions, those of the Executive and the Legislative Departments should be ako considered; not only to guard against conflict from tbe extension of either beyond its proper confines; but also that the aggregate of the three shall be made to cover the whole field of the government designed to be set on foot. And when in these lights it would be seen distinctly that it was designed that each of these departments should operate in different portions of this field and in entire and perfect harmony with each other, no power which was expressly delegated to any one of them could ever be derived to another by implication, even upon any basis of supposed necessity, much less of eon-■venience. Because, whatever was expressly committed to the judiciary, for instance, must be considered as inhibited to the other two departments upon the most obvious principles of sound construction, although there might be no express words of inhibition, and might be, in the construction of one of the other departments, expressions used that would seem to be to the contrary. And although this rule may not strongly apply to the parceling out of the whole powers of a single department among dif-erent functionaries, as it does to the parceling out of the whole power’s of government among its three departments, simply, because the division of power in the one case is of more importance to the citizen than in the other, still it must have a just application in a ratio parallel to this descending scale of importance. Thus, although it might not apply with so much force to the parceling out of the whole legislative functions among the Senate, the House of Representatives, and the Governor, as it would to the division of the whole powers of government among the three departments, yet, in the nature of things, it cannot be without some just application. Because, although it may be a political truth, that it is of more importance to public liberty and security and to the rights of the citizen, that the powers of the government should be divided among three distinct departnents, than that the powers of any one of them should be exerted through different functionaries in concert of co-operation and mutuality of check, yet the one is no less a political truth than the other, although of different grade of importance. And they were manifestly so regarded, and their benefits designed to be secured by the framers of the constitution. Nor can it be said that these considerations have no just application to the parceling out of the powers of the judicial department, because these, no less than those of the Executive and Legislative, have relation not only to private rights and security, but to civil and political liberty and public safety, and were designed no less to be exerted in reference to known political and legal truths. Then the line of demarcation marked out by the constitution in the parceling out of the powers of the judicial department no less deserve our regard than those marked out for the different parts of the legislative department. And when construction is necessary, or is wan’anted, these powers should be construed in like reference to the legal truths that were in the minds eye of the framers of the constitution, as should be had to a like situated political truth when construing'any given legislative power. Among the general politico-legal truths that were manifestly in the minds eye of the framers of the constitution was that justice can be best administered in a system embracing numerous courts, among which the judicial powers should be so parceled out that every citizen should have convenient access to justice and every dissatisfied suitor a reasonable opportunity for a revi-sal of his case by appellate power. This is shown, 1st: By the various courts established and the additional ones provided for. Had it been regarded as a matter of slight importance, the convention might have simply ordained that the judicial power shold be vested in such courts as should be from time to time established by the Legislature, and thus have left the whole subject to that department. 2d: It is shown by the provisions fixing all, except the Supreme Court and the separate Chancery Courts provided for, within the limits of the respective counties, and those of Justices of the Peace within their several townships. 3d: By the jurisdiction severally conferred upon them; and 4th: By the affirmative provision that the appellate power of the Supreme Court “shall be co-extensive with the State,” and that other provisions connected with it, which in effect incapacitates this Court from being invested by the Legislature with any original jurisdiction. Had the convenient access of suitors to the courts of justice, and the securing the advantages of revisal to every dissatisfied party been less prominent objects with the convention, these also might have been left to the legislature. But, not only were these subjects not left to the legislative discretion, but as to that of revisal by appellate power, it was so fixed by the constitution in the provision that the “Supreme Court, except in cases otherwise directed by this constitution, shall have appellate jurisdiction only,” that it is rendered impossible for the legislature to defeat a party’s right of revisal by any act they might pass conferring original jurisdiction upon this Court in any case. The citizen’s right to appeal may be regulated by law, and it may be enlarged, as has been done by provisions of law for intermediate appeals to the Circuit Courts, but it cannot be cut off by sending him in the first place to this Court; nor can he be authorized by the Legislature to come here for justice in the first instance. No single object, then, of all those in view in the establishment of the several Courts and the parceling out of the judicial power among them, was of more manifest prominence than that of securing for the dissatisfied party a reasonable opportunity for a revision of his case; and none seems to have been more emphatically provided for unless it should turn out in the sequel that there are other constitutional provisions which militate against those in its favor. And whether or not there are any such, we will now proceed to examine, keeping in view the principle of interpretation we have already discussed. The first section of the 7th article of the constitution expressly provides that the judicial power of the State shall be vested in certain courts of justice. And the succeeding sections parcel out this power among the several courts, and by the provisions for the creation of circuits, election of judges and other appropriate regulations, provided to a great extent for the harmonious and efficient exercise of those powers, leaving but little to be done by the Legislature to make the system practically useful. And yet leaving a large margin for finishing touches by that department, not only in the multiplication of tribunals, but in entrusting additional jurisdiction to those already established, within the pale of their constitutional capacity to receive and exercise it. In determining whether or not any one of these courts can rightfully exercise a given power, reference must not only be had to all the powers of such court, but to those of all the other courts, as one system formed within a department of the government, whose entire powers have limitations, qualifications and restrictions placed upon them by the bill of rights. Nor, is this all, for we must, at the same time, as we have seen, let the lights from without shine in. Now we have already seen, in the views that we have taken, that convenient justice and revision for the dissatisfied party are not only based upon known truths, practiced upon to a greater or less extent in every enlightened government, but that these objects were prominently contemplated by the framers of our system; but whether in subordination to extensive powers of original jurisdiction in this Court, is now to be determined. We have, in the outset, remarked that if these powers exist here, it must either be so found expressed in the constitution, or they must be derived from a just and necessary implication from the expressions used. Because, as we have seen, it is not possible for the Legislature to invest this court with such powers. First, then, are these powers granted to this court in express terms ? It has never been pretended that they were granted as independent judicial powers, otherwise than by the provision that this court “shall have power to issue writs of error and supersedeas, certiorari and habeas corpus, Mandamus and Quo Warranto, and other remedial writs, and to hear and determine the same.” Now, in the first place, we will limit our inquiry to the expressions used, without going into the reason, spirit, and1 design of the framers of the constitution; because, if the meaning is evident, and expressed in clear and precise terms, and leads to no absurd conclusion, we would have no warrant in the law to interpret what has no need of interpretation. Then, do the expressions used give to this court, in express terms, any jurisdiction of the causes to which the respective writs maybe made to apply? We think not. Because the power to issue a writ coupled with a power to hear and determine the same, is but the power (in the use of this means) to exercise an incidental power, coupled with the power to exercise the functions of a principal power, the grant of which as a principal power is thereby implied, but not in express terms granted. Writs are but the emanations from judicial power — its mere instrument — the incident of a principal —the effect of a cause. And to hear and determine a writ is but to exert the functions of judicial power — its faculty. Therefore, although the grant of the power to exert the functions may imply the grant to the functionary of the principal power itself whose functions he is to exert, it does not in express terms grant that principal power, but leaves it to be implied. Then we think it clear that these powers are not granted in exprees terms, and if granted at all, the grant must be derived from a just and necessary implication from the expression used. 2d: Then are they granted by necessary implication? And still limiting our inquiry to the expressions used, as before, we will proceed to examine this. And we at once concede that, if there is not an express grant to this Court of principal powers, to which all that is granted by the expressions we have above extracted may not be appropriately adjunct, that then, such implication would be unopposed, otherwise than by the absurd conclusion to which it would lead when considered in connection with some of the more prominent features of the judicial system which, from signs, natural and probable, we think it manifest was designed to be set on foot by the framers of the constitution. Is there, then, in the constitution a grant in express terms to this Court of such principal powers? A reference to that instrument will determine. And we there find the following provisions in the same section from which we have made the above extract and immediately preceding it, to wit: “ The Supreme Court, except in cases otherwise directed by this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the State, under such restrictions and regulations as may, from time to time, be prescribed by law: It shall have a general superintending control over all inferior and other courts of law and equity.” By these provisions, as we have elsewhere said, “This Court is invested with two great powers: the one appellate purely, and the other a general power of superintendency and control over all inferior and other jurisdictions. The one designed for the correction of errors in the proceedings' and judgments of the Subordinate Courts, the other to preserve harmony and insure efficiency in the whole system by forcing each subordinate tribunal to keep within its sphere of action and to prevent a failure of justice in extreme cases from any inherent defect in the subordinate courts or incapacity of their incumbents. And for these ends this Court is necessarily invested with the residuum of judicial power not invested in the other courts by the constitution or reserved within the discretion, express or implied of the Legislature, and as to the latter entrusted with their custody until withdrawn by the exercise of this discretion. (Amor Hunt Ex parte, 5 Eng.,p. 291, since approved and adopted.) And as to the nature and character of these powers of general superintendency and control, we have held in the case of Carnall v. Crawford County, (6 Eng. 605,) and elsewhere, that they embrace powers both of original and of revisory jurisdiction, and are to be exerted by means of process affecting and running to cases and parties litigant as well as to courts and officers. But, as various and as comprehensive as these powers are, that there is an implied and constitutional inhibition upon the exercise of any of them by this court, until relief has been first sought in the Circuit Court, or it be shown that all subordinate courts are incompetent to grant the relief, either from accidental causes or inherent defects, and that otherwise there would be a failure of justice. And especially that these powers shall not, except in extreme cases, be so exerted as to conflict with and in effect supersede the ordinary appellate jurisdiction of this court as regulated by law. (Carnall v. Crawford county, 6 Eng. 605.) These doctrines, as to the nature and character of the powers of general superintendency and control and of their use and design, and of the constitutional inhibition upon their exercise, are well settled doctrines in the Supreme Court of Alabama. And were also recognized and adopted by the new Supreme Court of Florida, at the January term, 1851, in the case of Ex parte Robert W. White, (4 Florida R. 165,) on an application for mandamus. It thus appears, by this reference to the constitution, that there is an express grant to this court of two principal powers, to which all that is in express terms granted relative to the specified and other remedial writs, is but an appropriate adjunct. And, therefore, the only ground is removed upon which independent original jurisdiction in this court can be derived by necessary implication from tiie expressions in the grant of the power to hear and determine the writs. And hence, no such jurisdiction can now be derived by any implication that can have any pretence of necessity for its basis. Seeing, then, that the powers in question cannot be conferred by the legislature; and have not been granted by the constitution in express terms; and cannot be derived from the expressions used in that instrument in relation to them, upon any basis of necessary implication, we have next to enquire whether or not they can be derived by any implication based upon any sound and just consideration of other provisions touching the judiciary department; not only as concerning its own harmony and efficiency, but also as relating to its harmonious connection with the other two departments'. Because we have seen that, when determining a question like that before us, reference must not only be had to the expressions in the constitution seeming to relate directly to the issue, but also to those which relate to the powers of all the courts as one system formed within one department of an entire government, whose whole powers have limitations fixed upon them by the bill of rights. And that, in doing so, we should permit every legitimate light to shine in from without. We are, then, necessarily lead to a more enlarged and substantial view of the question involved, which we shall endeavor to take with great brevity. There can be no doubt but that the people designed to set on foot a State Government, as the organ of their own sovereign powers, which they retained, whose action should accomplish the greatest amount of benefits to the greatest number of citizens, and that should manifest these benefits no less in the security of the rights of the individual citizen than in the achievement of the public safety. And there can be as little doubt but that the constitution was framed in this spirit, not only in its greatest outline, but in all its more minute provisions. Those touching the judiciary department relating to the number, location, and capacity of the courts of justice and to the security of appellate revision, and for an ultimate superintending control inhibited from action otherwise than in extreme cases, strikingly manifest this spirit. It cannot, then, be disregarded, when seeking the derivation of judicial powers by implication. If the powers in question can be derived from any implications other than those founded upon necessity, such must still rest upon the granted power to issue and determine the writs, because there can be no pretence of any other basis. And, if so, the consequence is inevitable that there would be but little limit to this jurisdiction. The exclusive original jurisdiction of all crimes amounting to felony at common law fixed in the Circuit Courts, and the exclusive original jurisdiction relating to certain contracts fixed in justices’ courts, would be carried out, but beyond this the jurisdiction in question would have but few limitations! This view of the subject did not fail strikingly to arrest the attention of this court, when the question was mooted in the case of The State vs. Ashley et al, (1 Ark., at page 310,) and elicited the following observation by the court in reference more particularly to the “other remedial writs, “ It would produce a direct conflict of authority between the several judicial tribunals, and involve them in the utmost confusion. It would destroy every vestige of harmony in the whole system, and virtually repeal every other grant of judicial power made by the constitution. It would draw to this forum original jurisdiction co-extensive with the State of every civil authority: for it must be observed that in respect to the sum or amount involved, there is no restriction whatever imposed by the constitution in any case in which this court can exercise original jurisdiction. * * * These consequences are clearly not within the object and intention of the convention, but in opposition to both.” The court, however, seeming to regard these considerations as alone applicable to the “ other remedial writs” and not as bearing upon those that are specified, to avoid the difficulties they saw, assumed the position (but without going at large into the reasons for doing so, or presenting the arguments by which it is to be sustained) that the power to issue the specified writs and to hear and determine the same, were powers of independent original jurisdiction, but that the power to issue the other remedial writs and to hear and determine the same were but powers adjunct to the appellate power of this Court and to its powers of superin-tendeney and control, both of which, they seem to say, are “expressly granted by the constitution” (Ib. p. 311,) but which upon more mature deliberation they subsequently held in Anthony Ex parte (5 Ark.) to be powers springing from the power to issue and hear and determine the writs. So brief are the observations of the court touching the ground upon which they rest the distinction between the specified and the other remedial writs that we are not sure that we .fully comprehend their proper force and solidity. In every aspect, however, in which we have been able to view them, they seem to be abnoxious to the objection, that the difficulty that was removed by one implication was the mere creation of another that was not itself based upon necessity; like mounting one presumption of law upon another and not presuming upon facts. Because the court first implied the grant of independent original jurisdiction from language that did not necessarily import it (as we have seen,) when all the language used in that connection is considered together (like considering together all the confessions of a party, both for and against him —or like determining the character of a parol contract by considering together all the colloquy between the parties.) And thus created the necessity for restraining the generality of that language, which was, in itself, of emphatic and clear import, to prevent its leading into flat absurdity. Nor is this all: The very basis of the ground on which the distinction between the writs is made to rest is but an implication, if not one based upon another. Nor are the authorities entirely silent, although not precisely in point, of a distinction between the specified and the other remedial writs. Expressions not dissimilar in the constitutions of Alabama and of the State of Florida, have been passed upon by their respective courts, and the distinction disallowed. In the Alabama case, the court say “the proviso is but an entire sentence, and the writs designated are named only as example or rather to illustrate the meaning intended more clearly than could be done by the employment of general words.” The “other remedial and original writs,” means writs of a kindred character or to effect a kindred object.” (Ex parte, Simington’ 9 Porter 387.) The Florida case is to the same purport. Ex parte Robert White, 4 Florida R. 171, But even if this almost illimitable jurisdiction were restricted to the specified writs, as it has heretofore been, the evils depicted by the court in the extract of its opinion, which we have above made, would not be removed but only diminished. And, besides this, other objections obtain that were not then alluded to, such as the desecration of the dissatisfied party’s right of revisal, and of the benefits which arise from the dispensation of justice in localities convenient to the residence of the parties. Both of which, we have seen, were favorite objects with the framers of the constitution. And it is no answer to the objection that all the more important rights of the State would be finally adjudicated without the benefit of revisal, to say that the same court that would otherwise revise, would, in the first instance, pass upon these interests finally, because the advantages of revisal are otherwise manifold and obvious. And besides these objections, there are express provisions of the constitution by which the Circuit Courts have ample jurisdiction of all these writs; and although this of itself is no invincible inhibition upon the exercise of a concurrent jurisdiction by this Court, if such was in express terms vested here, as would be the case in reference to the three departments of the government upon a question of power; nevertheless there is somewhat of reason in giving the principle of this rule some bearing, in concurrency with other considerations, when a judicial power that has been expressly parceled out to one court by the framers of the constitution is sought to be derived for another by implication merely. Especially when the latter court is expressly inhibited from receiving such a power otherwise than by the constitution itself, at the same time that other courts in the system are left with capacity to receive various additional powers from the hands of the Legislature. The result, then, of this last enquiry is, that, so far from finding any sound and just considerations in other provisions of the constitution touching the judicial department on which to base any implications whatsoever of the powers in question, we have found abundant ground for the contrary conclusion. Assuming, then, as we feel fully authorized to do, that this court has no original jurisdiction other than such as may be necessary to exercise a general superintendency and control over all the courts and as part and parcel of those powers of control, the result is that every provision of the constitution touching this department is effective and in harmony, and each with the other and with all is bound together in one indissoluble bond of union and amity. The result of these views is, that the application for the mandamus must be refused.