Ex parte Candee.

---

## Ex parte CANDEE.

[APPLICATION FOR MANDAMUS TO COMPEL PROBATE JUDGE TO APPROVE SHERIFF'S BOND.]

1. *Approval of bond of sheriff; imposes ministerial duty on probate judge.*—The duty of the judges of probate in this State to approve of the official bonds of sheriffs, is a ministerial, and not a judicial duty.

2. *Same; when mandamus will be allowed to compel approval of bond.*—A writ of *mandamus* is the appropriate remedy to compel judges of probate to approve of such bonds, if made in the form, and for the proper amount,

Ex parte Candee.

and payable and conditioned as required by law, with sufficient sureties, and presented for approval within fifteen days after the election.

3. *Sheriff; office of, what not vacated by.*—The office of a sheriff is not vacated by his failure to file his official bond in the office of the judge of probate of his county, within fifteen days after his election. Such failure may be a cause of forfeiture and vacancy, which may be taken advantage of and enforced by the State, in a proper judicial proceeding for that purpose.

4. *Office, proceeding to declare forfeiture of; what good defense to.*—In such a proceeding, it is a good defense to show that a sufficient bond was presented within the time prescribed, and that the judge of probate refused to approve of, and file the same in his office, without any legal reason for his refusal.

5. *Mandamus; proper practice where application for, has been denied in lower court.*—Where an application to show cause why a *mandamus* should not issue has been denied by an inferior court or judge, the petitioner may either take an appeal under the act of the 15th December, 1868, (Pamph. Acts, p. 410,) or he may renew his application to this court, setting forth under oath such a state of the case as shows that the court or judge who made the decision erred to his prejudice, and that he is entitled by the case made before such court or judge to the relief he seeks.

6. *Same; what practice will be adopted by supreme court to give it control of inferior jurisdictions.*—It is the duty of this court, to enable it to carry out the powers with which the constitution has invested it, of exercising "a general superintendence and control of inferior jurisdictions," to adopt such course of proceeding as will make its control complete.

7. *Supreme court; original jurisdiction of, not subject to legislative control.*—The appellate jurisdiction of this court is exercised under such restrictions, not repugnant to the constitution, as may from time to time be prescribed by law; but the legislature has no power to prescribe the mode or manner in which it must exercise its power to issue writs of injunction, *mandamus, habeas corpus, quo warranto,* and such other remedial and original writs as may be necessary to give it "a general superintendence and control of inferior jurisdictions."

8. *Rule to show cause, return to; how treated and what must state.*—On a rule to show cause why a *mandamus* should not issue, the petition is treated as the complaint, and the return to such rule is regarded as the plea, in which the facts stated in the petition must be denied, or such other facts stated as show that petitioner is not entitled to the relief he seeks; and such facts must be set forth with such distinctness, precision and certainty as to enable the court to judge of them, and determine whether they form an excuse or justification sufficient in law.

9. *Return to rule nisi, what defenses may set up; when bad.*—The return need not be single, but may contain several defenses or justifications consistent with each other, and if one is sufficient, the return must be allowed as to that one; but if the defenses are inconsistent or repugnant to each other, the whole return is bad, because the court can not know which to believe, and taken as a whole, the return is false and will be quashed on

the demurrer of the petitioner. In such cases, the demurrer is final and not *respondeas ouster*, but a peremptory *mandamus* will be awarded.

"This is an application, made on the relation or petition of Marshall G. Candee, in which he prays for a *rule nisi* to be issued and directed to the Hon. John T. Cook, the judge of probate of Wilcox county, requiring him to be and appear before this court, at such time as may be designated therein, and show cause, if any he have, why a writ of *mandamus* should not issue to him, to compel him to approve of the bond of petitioner as sheriff of Wilcox county, and allow the same to be filed and recorded in his office; and for such other and further remedial writs as may be consistent with law and right in the premises.

"Of said petition it is sufficient to say, it states that petitioner, on and before the 7th day of November, 1871, was over the age of twenty-one years, a resident citizen of Wilcox county and State of Alabama, and qualified to hold office; that on said 7th day of November, 1871, a legal election was held in said county for county officers, and, among others, for the office of sheriff of said county, for the constitutional term of three years; that at said election petitioner and one E. C. McWilliams were the candidates for the office of sheriff; that petitioner received, over and above the votes cast for his said competitor, and over and above the votes cast for any other person than petitioner, for said office of sheriff, a majority of above nineteen hundred votes, and was thereupon, by the supervisors of said election, declared to be duly elected sheriff of said county of Wilcox for the constitutional term of three years; that his election was, by said supervisors, duly certified to the secretary of state, and that on the 21st day of said month of November, 1871, a commission from the governor, Robert B. Lindsay, under the great seal of the State of Alabama, was duly issued to petitioner as sheriff of Wilcox county.

"That said John T. Cook, judge of probate, fixed the amount of the bond to be given by petitioner, as sheriff, &c., as aforesaid, at the sum of forty thousand dollars. Pe-

Ex parte Candee.

titioner states, that said amount is excessive, and, as he is informed and believes, extraordinarily large, and was a part of a plan and purpose, as he was informed and believed, of said judge and others confederated with him, to deprive petitioner of said office, by requiring a bond so large that he would not be able to give it, with the sureties required by law in case of sheriff's bonds; that this was the first indication of the purpose of said judge, which his subsequent conduct confirmed, to thwart the will of the people of said county in the election of petitioner as their sheriff.

" Petitioner further states, that he is a republican in politics, and in said contest was the republican candidate for said office, and, as he believes, was elected by republican votes, and that said fact produced much prejudice against him in said county, and he apprehended he would not be able to give the required sureties on his bond, all residents of said county, and all known to said judge; and being about to go to obtain sureties upon his bond, he sought an interview with said judge, and inquired what evidence he would require of the solvency and sufficiency of the sureties upon his bond, &c.; that said judge replied, that he should require the oath of the parties (commonly called the oath of justification) of what they were each, respectively, worth, and the certificate of the judge of probate of the county where they resided that he was personally acquainted with them, and believed them worth the amounts for which they respectively justified. With these instructions and this implied assurance, petitioner went to the city of Mobile, and prepared a bond for the amount prescribed, &c., as aforesaid, and payable and conditioned according to law in the case of sheriff's bonds, and procured sureties thereon, to-wit: C. F. Moulton, C. W. Pierce, M. D. Mickersham, Geo. F. Harrington, and Ellen B. Buck, residents of said city and county of Mobile, with their several affidavits that they were worth the amounts severally stated by them over and above liabilities and exemptions, and in the aggregate amounting to $40,000; and also procured the certificate of the Hon. Gustavus Horton, the judge of probate of Mobile county, that said several sureties to said

bond were personally known to him, and that they had voluntarily made oath that they were each possessed of property as stated, and that, in his opinion, said affidavits were entitled to full credence, and that to the best of his information and belief, they were severally worth the amounts stated, &c.

" Petitioner further states, that he presented said bond to said John T. Cook, judge, &c., as aforesaid, and, apprehending from his equivocal manner and captious objections to said bond that he intended to reject it, he took said bond and obtained the signature thereto of William Henderson of Wilcox county, and Arthur Bingham of Montgomery county, both of whom are good and solvent men, and owned, as petitioner was informed and believed, property over and above exemptions and their debts, to the amount of $20,000; that the solvency of said Henderson was personally known to said judge, as he stated; that petitioner procured and presented to said judge the affidavit of said Bingham that he was worth, over and above exemptions and liabilities, the sum of $5,000.

" Petitioner further states, upon information and belief, that said sureties upon said bond were worth more than the amount of said bond in property in the State of Alabama liable to execution, over and above their debts and legal exemptions.

" Petitioner further states, that within fifteen days after said election, to-wit, on the 22d day of November, 1871, he presented said bond, and the oaths of justification of said sureties, and the certificate of said Horton, judge, &c., as aforesaid, to said John T. Cook, judge, &c., and the affidavit of petitioner that the signatures of said sureties were genuine, except said Henderson's, whose signature was known to said judge, and offered to take the oath of office, &c., and requested said judge to approve of said bond, and that it be filed and recorded in his office. Thereupon, said judge administered to petitioner the oath of office, but refused to approve of said bond, or to allow it to be filed and recorded, &c.

" Petitioner further states, that upon the refusal of said

Ex parte Candee.

judge to approve of said bond, and file and record the same, he made another official bond for $40,000, with other sureties, to-wit, B. W. Norris, C. W. Dustan, J. L. Pennington, Charles O. Whitney, Robert W. Healey, C. W. Buckley, John G. Stokes, and J. W. Dimmick, worth, over and above exemptions and liabilities, in property in this State, the amount of said bond, and on the —— day of December, 1871, tendered the same to said judge for his approval, and offered to file the same as his official bond, or to allow the same to be filed or recorded, saying he could not, and would not, receive any bond from petitioner as sheriff of Wilcox county; that petitioner, thereupon, presented to said judge both of said bonds for approval, &c., and said judge again said he would not, and could not, receive any bond from petitioner as sheriff of Wilcox county.

"Petitioner further states that, by reason of said several wrongful and unjustifiable actings and doings of said judge, he is debarred from the exercise of the functions of sheriff of Wilcox county, and deprived of the emoluments of said office.

"Petitioner further states, that on the 20th day of December, 1871, he presented his petition to the Hon. P. O. Harper, judge of the eleventh judicial circuit of this State, which embraces the said county of Wilcox, setting forth the above recited facts, and prayed for a *rule nisi* to said John T. Cook, judge, &c., to appear and show cause why a *mandamus* should not issue to compel him to approve of said bond, or bonds, &c., and for such other proper remedial writs as, in right and law, petitioner should, on consideration, to be entitled to, &c.; that said Harper, judge, &c., as aforesaid, denied the prayer of petitioner, and adjudged him to pay the costs, &c.

"Petitioner states that he has no adequate remedy, &c., except by an application to this court, and prays, &c., as aforesaid."

WHITE & BOYNTON, for petition.—The duty of the pro-

bate judge in approving the sheriff's bond is purely minis-
terial.

An order made by the judge of the county court under
the act of 1824, declaring the office of sheriff vacant, &c.,
is wholly unauthorized, extra-judicial, and entitled to no
consideration whatever, as a judgment or inquisition of
office.

The statute of 1824 is very similar in its provisions to
section 164 of the Revised Code, and if the judge of pro-
bate has a right to refuse a good bond when tendered him
by a sheriff elect, and thereby prevent the sheriff from
filing his bond within fifteen days, if by the failure the law
vacates the office, the judge of probate can, by indirection
and the mere refusal to perform his duty in approving the
bond, accomplish the end of declaring the office vacant,
when, if he were to declare it vacant directly, his action
"would be of no consideration whatever, extra-judicial,"
and void.

Is there anything to give consideration to a judgment or
judicial action which is indirect, that would not appertain
to the same, if direct; and must not the same principle
which sets aside the one overturn the other?

If this is a matter in which the judge of probate exer-
cises no judicial discretion, his action in approving the bond
is ministerial, and not judicial; and he can exercise only
that moral discretion which is involved in determining
whether the bond is good and sufficient, and if it is good
and sufficient, then he is bound to approve the bond.

There are cases known to the law in which an officer is
made the sole judge, and from his decision there is no ap-
peal; but in such cases the sufficiency of the judgment
must appear by the record. The record must show affirm-
atively the facts necessary to sustain the jurisdiction, and
even when the facts, when found, are conclusive, still the
record must show that they were found by the court. In
all such cases, the record is examinable upon *certiorari*
from a higher court, and if found defective in the recital of
jurisdictional facts, the judgment will be quashed.

The action of a judge of probate in refusing to approve

Ex parte Candee.

a sheriff's bond, is not examinable upon appeal or *certiorari.* There are no entries of his action made of record, and none required. No recitals, no record; nothing of the permanency, the dignity, the conclusiveness, nor the force of a judgment or decree of a court. Its only judicial feature, if that be so considered, is the exercise of discretion in refusing to approve the bond.

In *Wammack v. Holloway,* (2 Ala. 31,) this court decide that the act of February 3d, 1840, which makes it the duty of the circuit judge, in vacation and without the intervention of a jury, to hear and determine whether an election for sheriff has been legally or illegally conducted, and to certify the facts, &c., can not be construed as conferring judicial powers upon the judge of the circuit court.

If such be the construction, the court say they would be compelled to declare the act unconstitutional, "but if the terms used will bear a construction consistent with the constitution, it is our duty to give it such construction."

The same sound rule of construction applied to section 814 of the Revised Code, would require that any doubt in the mind of the court, as to whether the approving of bonds by the judge of probate is a ministerial or judicial act, should be resolved in favor of its being ministerial, because, if held to be judicial, it would be subject to the same constitutional objections pointed out by the court as applicable to the act of February 3d, 1840, and must be declared void.

To give it validity, then, it is necessary to construe this provision as ministerial, and not as judicial.

The judges of the county court, in approving the bond of the sheriff as collector of the revenue, act in a ministerial capacity, having authority only to exercise a *reasonable* discretion in passing upon the sufficiency of the security offered.—*State, ex rel. Jackson, v. Co. Court of Howard Co.,* 41 Mo. 247.

The statute requiring the sheriff to give bond within fifteen days is directory, and does not impose a condition precedent to the party's title to the office.—*Ib.*

The discretion of the county court is confined to an examination of the security offered, and must be a sound, legal discretion, not capricious, arbitrary or oppressive.—*State, ex rel. v. Lafayette Co. Court, ib.* 221.

The discretion, the exercise of which by inferior tribunals or officers, this court will not undertake to regulate or coerce, is that discretion which is not, and can not be governed by any fixed principles or rules.—*The People v. Sup. Court of City of New York,* 5 Wend. 114.

The act of the commissioner of jurors (in New York), in determining upon the sufficiency of the excuse relied on by such an applicant, is not a judicial act within the rule relating to *mandamus.*—*People, ex rel. v. Taylor,* 1 Abb. P. R. U. S. 200.

When a specific duty was imposed by statute upon a public officer, he may be compelled to execute it by *mandamus,* although an action for damages might also lie.—*The People v. The Mayor,* 10 Wendell, 393.

In the case of *The People v. Minor,* (32 Barb. 466,) the writ issued to the register to compel satisfaction of a mortgage, although the register had to decide upon the sufficiency of the satisfaction price.—37 Barb. 466, *et seq.*

In *Sprowl v. Lawrence,* (33 Ala. R.) the court, in construing this section, (125 of the old Code, 164 Rev. Code,) say: "We do not think, however, that the mere failure of a public officer to file his bond within the prescribed time effects his absolute and instantaneous removal from office."

The failure of a legally elected sheriff to file his bond within the time prescribed does not, by its unaided force, operate his instantaneous removal from office, and a bond executed by him more than fifteen days after his election, and before any steps or proceeding on the part of the State to effect his amotion, must be considered as the bond of an officer within the meaning of section 132 of the Code. *Sprowl v. Lawrence,* 33 Ala.

If the officer elect has not forfeited his office, he is still an officer, and the office is not vacated.

In *Hill v. The State,* (1 Ala. 559,) the court, in passing upon a similar statute, say, that the action of the judge of

probate under it is not judicial, and that he does not declare or decree the office vacated; and the duty enjoined in section 164 upon the judge of probate is to certify the failure to give bond, and not to declare a vacancy. This, then, is not a proceeding to remove, nor is it a proceeding by the State, but is simply a certificate of a fact by a judge of probate, and could not, consistently with itself or any rule of practice or principle of law, work out a removal from office.

The manner of proceeding referred to by the court is evidently an information in the nature of a "*quo warranto.*" The failure to give the bond is, then, the only ground for this proceeding by the State, and until such proceeding is instituted and prosecuted to judgment of amotion, the officer elect continues to be the officer; and if no such inquisition is ever executed, he continues in office to the end of his term.

In the following cases the question of the validity and construction of statutes kindred to that under consideration have been discussed, and the inclination of the courts seem strongly against their validity, in effecting or impairthe right to the office, farther than to furnish grounds for a forfeiture: *McWhorter v. McGehee*, 1 Stew. 552-3; *Hill v. The State*, 1 Ala. 559; *Wammack v. Holloway*, 2 Ala. 34; *Sprowl v. Lawrence*, 33 Ala.

When the constitution provides for the election of an officer, he derives his title to the office from the election, and the commission is mere evidence of his election.

In England, where the statutes requiring the test-oath are very stringent, declaring the election null and void if the officer fails to take the oath, the same principle is established by the courts.—2 Mod. 193; 10 Mod. 185; Lord Raym. 299; *State v. Tomer*, 8 Rich. 216; *Kottman v. Ayer*, 3 Strob. 92.

Vacancy in office must be established in a proceeding regularly tending to that end.—*Stokes v. Kirkpatrick*, 1 Metcalf, 138.

An officer is not obliged by *mandamus* to compel a board to approve his said bond, but may defend in *quo warranto*

on the ground that there is no failure on his part.—*People v. Scammell*, 7 Cal. 432.

The rule, that *mandamus* will not be awarded where the law provides another remedy, is qualified by the condition that the other remedy must be specific and adequate. If there be no other specific and adequate remedy *mandamus* will issue.

There are numerous cases in which the courts have granted the writ notwithstanding there was a remedy by *quo warranto*.—Tapping on Mandamus, 27 Mar. top p. 78; *Rex v. Oxford*, 6 A. & E. 349; *Rex v. Colchester*, 2 T. R. 260; *State, ex rel. v. Ely, Judge*, 43 Ala. 568; *King v. Archbishop of Canterbury*, 15 East, 117; *Rex v. Justices of Wittskin*, 10 East. 404; *King v. Bishop of Chester*, 1 Term, 396; *Etheridge v. Hill*, 7 Por. 54.

PECK, C. J., (after stating facts as above.)—1. The constitution, Art. V, section 21, ordains, that "a sheriff shall be elected in each county, by the qualified electors thereof, who shall hold his office for the term of three years, unless sooner removed," &c.

Whenever the constitution provides for the election of any civil officer by the people, the right to exercise the office is derived from his election, and the commission issued by the governor is only evidence of the right.

The right to exercise an office is as much a species of property as any other thing capable of possession; in other words, an office is as much property as any thing which is capable of being held or owned.— *Wammack v. Holloway*, 2 Ala. 31. For the safety of the people, however, the legislature may require of an officer, before he enters upon the duties of his office, to give a bond with surety for the faithful performance of his duties. *Salus populi suprema lex.* Although this maxim generally applies to cases of necessity, it also applies to less urgent cases, as, where the legislature, for the public good, regulates and restricts the use and enjoyment of property by individuals.—Broom's Legal Maxims, m. p. 4. This is especially so, as it respects the right to exercise the privileges and enjoy the profits and

emoluments of a public office. For this purpose section 814 of the Revised Code enacts, that a "sheriff, before entering on the duties of his office, must give bond, with security, in an amount to be fixed by the judge of probate of his county, not less than five thousand dollars, payable and conditioned as provided in section 157, which bond must be approved by the judge of probate, and filed in his office."

Section 162 of the Revised Code provides, that "such bonds, when required to be filed in the office of the judge of probate, must be filed therein within fifteen days after such election or appointment." And section 164 says, that "if any officer of this State, required by law to give bond, fails to file the same in the proper office, within the time fixed by the four preceding sections, *he vacates his office,*" &c.

An office being property, is, like other property, under the protection of the law, and consequently no one can be deprived of his office "but by due process of law."—Art. I, § 8, Const. "Due process of law" means a judicial proceeding regularly conducted *in a court of justice,* as contradistinguished from a statutory enactment.—*Dorman v. The State,* 34 Ala. p. 236; *Weaver et al. v. Lapsley,* 43 Ala. pp. 224–232.

The office of sheriff being a constitutional office, as distinguished from an office created by statute, a sheriff, no more than the highest officer in the State, can be deprived of his office, nor can it be vacated by an act of the legislature. This can only be done "by due process of law."

If the only construction of said section 164 is, that by its own vigor it vacated the petitioner's office, because his official bond was not filed in the office of the judge of probate within fifteen days after his election, then we should be constrained to declare it unconstitutional. Such a construction would be to deprive petitioner of his office, without providing any mode by which his right to his office could be determined by the verdict of a jury, and thus bring it in conflict with section 13, article I, of the consti-

tution, which declares, "that the right of trial by jury shall remain inviolate."

It seems to us more reasonable to construe said section to mean, that the failure of petitioner to file his bond in the office of the judge of probate within fifteen days after his election, did not, *per se*, vacate his office, but created a cause of forfeiture or vacancy only, that might be enforced by the State in a proper judicial proceeding instituted for that purpose. In such a proceeding, it would be a good defense to show, that the failure to file his bond within the time prescribed was not the fault of petitioner; that he had tendered to the judge of probate a good and sufficient official bond, within the fifteen days, and requested said judge to approve of, and file and record the same, and that he neglected or refused to approve of, and to file and record said bond, without any sufficient legal reason therefor. We think such a construction warranted by the decisions of this court, in the cases of *Wammack v. Holloway, supra; Sprowl v. Lawrence*, 33 Ala. 674; and *The State, ex rel. v. Ely, Judge, &c.*, 43 Ala. 568.

2. Having determined that the petitioner, on the facts stated in his petition, (and for the purposes of this application, being *ex parte*, they are to be taken as true,) is sheriff of Wilcox county, and that he is prevented from entering on the duties of his office, by the wrongful refusal of the judge of probate of said county to approve of his official bond, and to permit it to be filed and recorded in his office, as required by said sections 164 and 814 of the Revised Code; we now proceed to the examination of the question, whether the petitioner is entitled to the aid of the writ of *mandamus* to compel said judge of probate to approve of his official bond, and to file and record the same in his office.

We think it can admit of no doubt, that where there is a right to execute an office, perform a service, or exercise a franchise, more especially if it be a matter of public concern, or attended with profit, and a person having such right is wrongfully kept out of possession of such right, or prevented from entering upon the discharge of its duties,

Ex parte Candee.

and he has no other specific legal remedy, the courts will interfere by *mandamus,* upon reasons of justice and public policy, to preserve peace and good government.—Moses on Mandamus, 14; 3 Stephen's Nisi Prius, 2292.

Where the duty to be performed is, accurately speaking, judicial, or rests in the discretion of the court, judge or officer, a *mandamus* will lie to compel the court, judge or officer to go forward and do the duty, or to exercise the discretion, but it will not direct how the duty shall be performed or the discretion shall be exercised; if, however, the duty is ministerial, and not wholly discretionary, in the court, judge or officer, and the duty itself is specific and defined, and it is neglected or refused to be performed, a writ of *mandamus* will be issued, not only to compel its performance, but it will direct particularly how the duty shall be performed.

The duty of a probate judge to approve of a sheriff's official bond is, in no proper sense, a judicial duty. It by no means follows that a duty is judicial, because it is to be performed by a judge; if in its performance he does not exercise the powers that appropriately appertain to his judicial office, it is ministerial, and not judicial, although its performance requires the exercise of his judgment.

A judge of the circuit court may issue an attachment, and in doing so, he is required to take a bond, with sufficient sureties; in other words, he must approve of the bond and judge of the sufficiency of the sureties. In doing this, he does not perform a judicial duty, for the same thing may be done by the clerk of his court. Other instances will readily suggest themselves, without being here stated, where acts and duties are not only performed, but are required to be performed by judicial officers, that are in no proper sense judicial acts or duties.

As a striking instance of this sort, I refer to the case of *Wammack v. Holloway, supra.* But I deem it unnecessary to argue this matter further; the question has been decided by this court, and it is no longer an open question with us. In the case of *The State, ex rel. v. Ely, Judge, &c.,* it is decided that *mandamus* is the appropriate remedy to compel

the probate judge to approve of a tax collector's official bond.—43 Ala. 568. In principle, there is no real distinction between that case and the present.

We also hold, that the duty of the probate judge to fix the amount of a sheriff's official bond is a ministerial duty, and that he may not only be compelled to fix the amount, but also that this court has the power to superintend and control the performance of this duty, and require it to be done in a reasonable manner. We do not now decide that the amount of petitioner's bond in this case is excessive; it is not necessary to do so, but we feel constrained to say, we think it unreasonable and oppressive, and that the judge of probate owes it to himself as a conscientious man, to his reputation as a just and an impartial judge, to reduce the amount of said bond, lest it may be drawn in, as a precedent in future cases, to the great scandal of the law and its administration, and to the detriment and hindrance of the public service and the general welfare.

Let a *rule nisi* be issued to the Hon. John T. Cook, the judge of probate of Wilcox county, requiring him to approve of the official bond of Marshall G. Candee, sheriff of said county, presented to him for approval on the 22d day of November, 1871, and that he file and record the same in his office, or that he show cause on Thursday, the motion day of the first division of this court, at the next term thereof, to commence on the first Monday of June of this present year, why he has not done so.

———

After the delivery of the foregoing opinion, and the service of the *rule nisi*, as therein ordered, at the January term, 1872, the Hon. John T. Cook, probate judge, &c., appeared at the June term, 1872, and moved to dismiss the petition, on the ground that petitioner's remedy was not by *mandamus.* This motion and the return to the *rule nisi* were submitted together.

The return to the *rule nisi* sets out, in substance, the fol-

lowing grounds why a peremptory *mandamus* should not issue:

1. Respondent admits that petitioner was duly elected sheriff of said Wilcox county on the 7th day of November, 1871; that said election was duly certified to the governor of the State of Alabama, but respondent does not know whether or not a commission was issued by the governor to said Candee as such sheriff. He admits that said Candee, on the 22d day of November, 1871, tendered to him, as such judge of probate, a bond as such sheriff, with security thereon, which securities were insufficient, in the penalty of forty thousand dollars and payable and conditioned according to law, and that respondent refused to approve, record and file said bond.

2. That respondent refused to approve, record and file said bond presented to him, &c., by petitioner, on the 22d of November, 1871, being the same bond specified in said alternative writ, because respondent was, and is still, satisfied that at the time said bond was presented, that the securities were insufficient.

3. That respondent refused to approve, record and file the said bond presented to him, &c., by the petitioner, on the 22d day of November, 1871, being the same bond specified in the said alternative writ, because the securities on said bond did not separately, or in the aggregate, at the time they signed said bond, or the time said bond was presented to him for approval, own property within the limits of the State of Alabama, in their own right and subject to legal process, to the amount of the penalty of said bond, excluding exemptions; that respondent would at once, and without hesitation, have approved said bond, if it had been sufficient; that respondent never has refused to approve, record and file a sufficient bond tendered by the said Candee, as sheriff as aforesaid.

4. That respondent refused to approve, record and file the said bond presented to him, &c., by petitioner, being the same bond specified in the alternative writ, because respondent was satisfied at the time said bond was presented, and is still satisfied, that the securities to the said bond in

the aggregate were insufficient, and that the said securities in the aggregate did not, either at the time they signed said bond, or at the time said bond was presented to him for approval, own property within the limits of the State of Alabama, in their own right and subject to legal process, to the amount of the penalty of said bond, excluding exemptions.

5. That respondent refused to approve, record and file the bond presented to him, &c., by the petitioner, on the 22d of November, 1871, being the same bond specified in said alternative writ, because respondent was satisfied at the time said bond was presented, and is still satisfied, that the securities to the said bond were insufficient, and that the said securities did not, either at the time they signed said bond, or at the time said bond was presented to him for approval, (to-wit, on the 22d of November, 1871,) own property within the limits of the State of Alabama, in their own right and subject to legal process, &c., to the amount of the penalty of said bond, excluding exemptions; and that the said Candee himself did not, either at the time he signed said bond, or at the time said bond was presented to respondent for approval, (to-wit, on the 22d November, 1871,) own property within the limits of said State, subject to legal process, excluding exemptions.

6. That respondent refused to approve, record and file the said bond presented to him, &c., by the petitioner, being the same bond specified in said alternative writ, because at the time the securities on said bond signed the same, and at the time said bond was presented to him for approval, the said securities on said bond were not worth anything over and above their debts and liabilities; that at the time aforesaid the said securities were (as securities and principals) on official bonds, and other legal bonds, given and executed within the limits of the State of Alabama, then outstanding, &c., to the amount of over one hundred thousand dollars, and respondent says that said securities on said bond were insufficient at the time they signed said bond, and at the time said bond was presented to him for approval.

7. That respondent refused to approve, record and file the said bond presented to him, &c., by the petitioner, on the 22d November, 1871, because respondent, at the time said bond was presented, was satisfied, and is still satisfied, that the securities on said bond were insufficient; that the said M. D. Wickersham, one of the securities on said bond, was, at the time he signed said bond, and at the time said bond was presented, &c., on official bonds and other legal bonds, given and executed within the limits of the State of Alabama, then outstanding, &c., to the amount of over twenty-five thousand dollars; that the said George F. Harrington, another of the securities, was, at the time he signed said bond and at the time said bond was presented to respondent for approval, on official bonds and other legal bonds, given and executed within the limits of the State of Alabama, then outstanding, &c., to the amount of over twenty thousand dollars; that C. W. Pierce, another of the securities, was, at the time he signed said bond and at the time it was presented to respondent for approval, on official bonds and other legal bonds, given and executed within the limits of the State of Alabama, then outstanding, &c., to the amount of over five thousand dollars; that C. F. Moulton, another of the securities, was, at the time he signed said bond and at the time it was presented to respondent for approval, on official bonds and other legal bonds, given and executed within the limits of the state of Alabama, then outstanding, unsatisfied, &c., to the amount of over twenty thousand dollars; that A. E. Buck, another of the securities, was, at the time he signed said bond and at the time said bond was presented, &c., on official bonds and other legal bonds, given and executed within the limits of the State of Alabama, then outstanding, &c., to the amount of over twenty thousand dollars; that William Henderson, another of the securities, was, at the time he signed said bond and at the time said bond was presented to respondent, &c., for approval, on official bonds and other legal bonds, &c., to the amount of over sixty thousand dollars; that Arthur Bingham, another security, was, at the time he signed said bond and at the time it was presented,

&c., on official bonds and other legal bonds, given and executed within the State of Alabama, then outstanding, &c., to the amount of over ten thousand dollars; that the said Ellen B. Buck, another of the securities on said bond, at the time she signed said bond was a married woman, the wife of one A. E. Buck.

8. That a very short time after the election for sheriff, petitioner came to respondent and asked what amount the bond of the sheriff of said Wilcox county would be fixed at, to which respondent replied, "at forty thousand dollars." Petitioner then and there replied, that that was a reasonable amount, and that he was satisfied. Respondent further says, that the records of Wilcox county in his office show that the bonds of the sheriffs of said Wilcox county, for the last thirty years, and up to the present time, excepting a short period since the war, have never been less than forty thousand dollars, and that for much the greater part of that time, the sheriff's bond has been in the penalty of $50,000; that the bond of E. C. McWilliams, who now holds the office of sheriff of said Wilcox county, and discharges the duties of said office of sheriff of Wilcox county, is for forty thousand dollars; and that at the last spring term (1872) of the circuit court held for said county of Wilcox, the grand jury of said county, in their official report, recommended that the bond of the said E. C. McWilliams, as sheriff of said county, be raised to the penal sum of fifty thousand dollars.

9. That the petitioner did, on or about the 20th day of December, 1871, and before the commencement of proceedings in this court, present his written petition to the judge of the eleventh judicial circuit, which embraces the said county of Wilcox, setting forth the same facts as those set forth in the said alternative writ, and praying the said circuit judge to grant petitioner a *rule nisi* to this respondent, as judge of probate of Wilcox county, commanding respondent to appear before the said circuit judge and show cause why a *mandamus* should not issue to compel respondent to approve said bond or bonds of petitioner, as sheriff of Wilcox county, and to permit petitioner to have the same

filed and recorded; and for such other proper and remedial writs as, in right and law, the petitioner should appear on consideration to be entitled to; and the said petition was overruled and refused, and said petition denied, and the costs adjudged against the petitioner, from which decision the said petitioner has not appealed, nor in any way sought to revise the same, but the said decision is now in full force and effect.

10. That on the 21st day of December, 1871, the petitioner presented to the judge of the eleventh judicial circuit of the State of Alabama, to which circuit the county of Wilcox belongs, his petition to have the said judge fix the amount of his (said Candee's) bond as sheriff of said Wilcox county; that on said application, the judge as aforesaid fixed the amount of said bond, and took and approved the same; that on the 13th day of January, 1872, on the petition of said Candee, the circuit judge issued an alternative writ of *mandamus*, directed to this respondent, commanding him to record and file the bond of the said petitioner, as sheriff of Wilcox county, which had been fixed and approved by the circuit judge of the eleventh judicial circuit as aforesaid; that such proceedings were had on said petition, that on the hearing before the circuit judge, on the 25th day of January, 1872, the prayer of the petitioner for a peremptory *mandamus* was granted; that an appeal to this court from the said decision was taken by this respondent, and said appeal is now pending in this honorable court.

11. That under the laws of the State of Alabama, as they stood on the 22d day of November, 1871, when said bond was presented to respondent for approval, respondent was not the officer appointed by law to fix and approve the said bond of the said Marshall G. Candee, as sheriff of said county of Wilcox.

The petitioner moved to quash the return to the *rule nisi*—

1st. Because it is no answer to the *rule nisi*.

2d. Because the return is insufficient and uncertain.

3d. Because it does not answer all the statements of the petition.

4th. Because it is argumentative, evasive and repugnant.

ALEX. WHITE, *pro motion.*—As we have no statute similar to that of Ann. 9 Ch. 20, allowing a traverse of the answer to a *rule nisi* in *mandamus*, the English practice, as it was before the passage of that statute, not in its *most* stringent sense, but still in a stringent sense, prevails in Alabama. The answer is pleading, and the reason of the rule of strictness is, that as the party seeking the right is required to accept the answer as true, and is defeated or can proceed no further, if the answer present a good defense, it devolves upon the defendant to meet the entire case made by the petioner, answer *all* the allegations of the petition, and answer them directly, explicitly and fully. The right which he has to compel the petitioner to take his answer as true, invokes the correlative right in the petitioner to have a full and direct answer. This is upon the conception of that level or platform of even justice which the law contemplates as assigned to any one and to all parties in our courts, and from which there can be in the abstract no departure, no matter how difficult it may be in all cases to carry it into practice.

Closely linked to this is the next and most commonly assigned reason for this rule, that is, that the defense made by the answer must be stated with such degree of certainty, as to enable the court to determine whether it constitutes a justification or an excuse for failing to obey the mandate of the court, as expressed in the *rule nisi*.

This certainty is not a capricious rule. It is fixed and defined with as much accuracy as a pure abstraction can be. It is defined by legal phraseology: "Certainty to a certain extent in general." It is made more perspicuous, by degrees above and below, in pleading.

1st. Certainty to a common intent. 2d. Certainty to a certain extent in general. 3d. To a certain intent in every particular.—Co. Lit. 303*a*; 1 Chitty's Pl. 233.

The first of these is sufficient in a plea in bar.—Chitty,

*supra.* But the second is the certainty which is required in a return to *mandamus*.

Now, without again reviewing the several matters set up in the return, or enumerating the particulars in which they are deficient, it is respectfully submitted, that when subjected to legal tests, they are signally defective. Pleading is something more than a mere general statement of facts.

It is the facts which constitute the issue or issues between the parties to a cause, stated according to established rules, which have been adopted as the best mode of eliminating truth and administering justice, and if a declaration or plea fails to conform to these established rules, it is not sufficient.

The return in this case states, in a general and very loose manner, some facts from which it might be inferred that the defendant was justifiable in not approving the bond of petitioner; but it presents no issuable matter from which, if true as stated, the court can know that he was justifiable. As an example, the court can not pass upon the validity of bonds of which no description is given. Suppose it to be the case of a higher security given, and that when sued on an open account, the defendant should plead that he had given a promissory note for the account, without any description of the note; its date, amount, to whom given, and when due. Such a plea would be manifestly demurrable. Why? Because the court could not know, upon the face of the plea, whether it was good or not.

This is the rule of certainty applicable to pleas in bar, but a stricter rule applies to returns to a *mandamus*—"Certainty to a certain extent in general."

This means what, upon a fair and reasonable estimation, may be called certain, without recurring to possible facts which do not appear. The charge must contain such a description of the crime, &c., that, without intending any thing but what appears, the defendant may know what he is to answer, and what is intended to be proved, in order that the jury may be warranted in their verdict and the court in the judgment they award.—1 Chitty's Plead. 233*a*, (marg. 234.)

The return is clearly inconsistent. If this be a just ground of objection, the authorities declare, "that the return must be quashed, and that a peremptory *mandamus* must be awarded."

The excuse which the defendant sets up in the body of his return for refusing to approve the bond of petitioner is, that the security was insufficient. This is repeated often, in manner and form somewhat different.

In conclusion, he sets up, that he did not approve the bond because he was not the officer authorized by law to approve it.

Now, one or the other of these must be false. If he was not authorized by law to approve the bond, he could have had nothing to do with the question of the sufficiency of the sureties, no more than a stranger or any other citizen of Wilcox county.

On the other hand, he says that the said Candee came to him, after his election, and asked him at what he would fix his bond, and he told him at forty thousand dollars; and Candee replied, that that was very reasonable, and that he was satisfied with it.

This, and many other paragraphs, imply irresistibly that he was the officer authorized by law to approve the bond, and are utterly inconsistent with the assertion in the 11th paragraph, that he was not such officer.

S. J. CUMMING, *contra.*—1. The petitioner's remedy is not by *mandamus* from this court. It is by *certiorari*, or appeal, to bring up and review the decision of the circuit judge, refusing to grant the prayer of the petition to him for a *rule nisi.*—Const. Ala. § 2, art. 6; *The State, &c., v. The Judge of Macon Co.*, 15 Ala. 740; *Tarver v. Comm'rs Court*, 17 Ala. 526; *Comm'rs Ct. v. Tarver*, 21 Ala. 661; *Ex parte Keenan*, 21 Ala. 558; Acts of 1868, p. 410; *Ex parte Croom & May*, 19 Ala. 561; *State, &c., v. Taylor*, 19 Wis. 566.

The case of *Ex parte Boynton*, (44 Ala. 261,) does not overrule or militate against *Ex parte Henderson*, as neither the reasons given, or the facts stated, exist in this case.

The point now made was not raised or discussed in *Ex parte Selma & Gulf R. R. Co.*, (45 Ala. 696.) Another reason why *Ex parte Boynton* does not apply is this: The act of 1868 does not give an appeal from the decision of a probate judge, but only from judgments of judges of the circuit and city courts.

The rule is a familiar one, that a *mandamus* will not issue where there is any other adequate and sufficient remedy. Here there was, and is, an adequate and sufficient remedy under the act of 1868, p. 410.

Previous to the act of 1868, there was no law giving an appeal in such cases, and the decisions of this court previous to the passage of that act, are to be considered with that point in view.—*State v. The Judge, &c.*, 12 Ala. 342.

2. The return is sufficiently certain. The old strict rule as to certainty in return does not hold, either in England or in this country, at the present time. It has been greatly relaxed. The rule laid down is, that the return must be good, tested by the ordinary rules of pleading both in form and substance.—Moses on Mand. 210; *Comm'rs Court v. Tarver*, 29 Ala. 414; *Chance v. Temple*, 1 Clarke, (Iowa,) 178; *Inhabitant, &c., v. Co. Comm'rs*, 10 Pick. 59.

In this State the rules of pleading are liberal, and are no more strict in *mandamus* cases than in other cases.—*Ex parte Garland*, 42 Ala. 559.

3. Although the duty of a judge of probate, in the matter of the approval of a sheriff's bond, may be in its nature ministerial, yet he has a discretionary power vested in him by the statute, and that discretionary power of the probate judge will not be controlled by *mandamus*.—Moses on Mandamus, p. 61; *Gulick v. New*, 14 Ind. 93; *Ex parte David Taylor*, 14 How. (U. S.) 3; *Bradshear v. Mason*, 6 *ib.* 92; *Com. v. Justices, &c.*, 2 Pick. 414; *Glasscock v. Com'rs, &c.*, 3 Texas, 51; *Meyer v. Carolan*, 9 Texas, 250; *Kendall v. U. S., &c.*, 12 Peters, 524; *Decatur v. Paulding*, 14 Pet. 515; *Dunklin Co. v. Dist. Court*, 23 Mis. 449; *Cullem, Adm'x, v. Latimer*, 4 Texas, 329; *People v. Board of Sup.*, 12 Barb. 446; *People v. Canal Board*, 13 Barb. 432; *Com'rs v. Smith*,

5 Texas, 471; *Brem v. Ark. Co. Ct.*, 4 Eng. 240; *U. S., &c., v. Judge Lawrence*, 3 Dallas, 53; *Green v. Purnell*, 12 Ned. 329; *State, &c., v. Fletcher*, 39 Mis. 388; *School Directors v. Anderson*, 45 Penn. 388; *State, &c., v. Robinson*, 1 Kan. 188; *Ex parte Echols*, 39 Ala. 698; *Williams v. Saunders*, 5 Caldwell, 60; *Arberry v. Beavers*, 6 Texas, 456; *Sinnickson v. Corwine*, 2 Dutcher, 311.

4. The judge of probate having exercised the discretion vested in him by law, as shown by his return, if he has improperly and falsely exercised that discretion, the petitioner's remedy is by an action against him. The return must be taken as true.—*Tarver v. Comm'rs*, 21 Ala. 661; *Meyer v. Carolan*, 9 Tex. 250; *Harwood v. Marshall*, 10 Md. 451; *Carroll v. Board of Police*, 28 Miss. 38; Rev. Code, §§ 157, 814.

5. What is ministerial, and what judicial? Where the law prescribes and defines the duty to be performed, with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial. But where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial. *Comm'rs v. Smith*, 5 Texas, 470; *State, &c., v. Hastings*, 10 Wis. 518.

6. The return must be made to the writ, and not to the petition. The writ answers the place of a declaration.—See Tapp. on Mand., ch. 5, p. 308. And such is the modern practice, as laid down by Moses in his work on Mandamus.—See p. 203.

7. The appeal act of 1868 can not be held as cumulative to the right of this court to issue a writ of *mandamus* in this case; because *mandamus* is never granted where there is any other adequate remedy. The act of 1868, p. 410, gives an adequate remedy to the petitioner.

8. If it should be held by this court that the return should have been to the petition, and not to the writ, or *rule nisi*, then the respondent asks leave to file an answer more full and perfect. The record will show that neither the petition, nor a copy of it, was served upon the respondent.—*State, &c., v. Jones*, 10 Iowa, 65.

9. As to the practice in *mandamus* in this State, see *Ex parte Garland*, 42 Ala. 559; *Chance v. Temple*, 1 Clarke (Iowa) 178.

PECK, C. J.—Before entering upon the examination of the return of the Hon. John T. Cook, probate judge of Wilcox county, to the *rule nisi* in this case, ordered to be issued by this court at the January term thereof, 1872, it seems proper to consider and dispose of the motion, now made by said probate judge, to dismiss the petition in this behalf, upon which the said *rule nisi* was granted. Said petition states, that before petitioner made his application to this court for said *rule nisi*, he had, on his petition setting forth the same facts stated in his petition in this behalf, made an application to the circuit judge of the proper circuit, for a *rule nisi* on said probate judge, to show cause why he refused to approve of and file his (petitioner's) official bond as sheriff of said county of Wilcox; and that said circuit court judge denied the prayer of petitioner's said petition, and taxed him with the costs.

The said probate judge now insists that petitioner's remedy in the premises was not by *mandamus* from this court, but on the denial of his said application by said circuit court judge, his remedy was by *certiorari* and appeal, to bring up and review the decision of said circuit court judge, and, therefore, he now here moves this court to dismiss said petition.

Although an appeal might have been taken to this court from the decision of the circuit court judge, was that the petitioner's only remedy? Or might he not renew his application in this court, setting forth such a state of case as showed that the circuit court judge who made the decision erred to his prejudice, and that petitioner was entitled, by the case made before the said circuit court judge, to the relief he sought?

This was the course pursued in *Ex parte Croom & May*, (19 Ala. 562.) And this course, we hold, may now be pursued, notwithstanding the act of the 15th of December, 1868, (Pamph. Acts 1868, p. 410,) entitled "An act to allow

appeals to the supreme court, in certain cases." That act provides, "that appeals *may be taken* to the supreme court of Alabama, from the judgments of judges of the circuit and city courts, on application for writs of *certiorari*, *supersedeas*, *quo warranto*, *mandamus*, and other remedial writs," &c.

We think it manifest, this act does not, and was not intended to, limit and control the powers of this court, and to direct the mode and manner in which it must exercise the powers conferred upon it by section 2, article 6, of the constitution, to give it a general superintendence and control of inferior jurisdictions. Said section declares, that "except in cases otherwise directed in this constitution, the supreme court shall have appellate jurisdiction only, which shall be coextensive with the State, under such restrictions and regulations, not repugnant to this constitution, as may from time to time be prescribed by law; *Provided*, that said court shall have power to issue writs of injunction, *mandamus*, *habeas corpus*, *quo warranto*, and such other remedial and original writs, as may be necessary to give it 'a general superintendence and control of inferior jurisdictions.' "

Under this section of the constitution, the legislature may impose such restrictions and regulations, not repugnant to the constitution, upon the appellate jurisdiction of this court, but it has no power to limit or prescribe the mode and manner in which it must exercise its power to issue the writs therein named, and such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions. If they could, the power thus conferred upon this court by the constitution might be so crippled and embarrassed, as to render it worthless for the great and salutary purposes contemplated by the constitution.

This court has the power to adopt its own practice and mode of proceeding, in exercising the powers conferred upon it by the proviso of this section of the constitution, and to so mould and fashion it, as to fit it to the exigencies of each particular case.

In the case of *Ex parte Croom & May, supra,* which was an application on the part of the petitioners for the writ of *habeas corpus* to admit them to bail, after an application to a circuit judge for that purpose had been denied, this court says, "it is the duty of this court, in order to enable it to carry out the powers with which the constitution invests it, of exercising 'a general superintendence and control of inferior jurisdictions,' to adopt such course of proceeding as will make its control complete."

This court also says, in the same case, "it is important that the practice in such cases should be settled, and after the best deliberation which we have been enabled to bestow upon this branch of the case, we conceive the correct practice to be, for the prisoners, who conceive themselves aggrieved by the decision of the inferior jurisdiction in the matter of their discharge, to petition this court for the writ of *habeas corpus,* and such other remedial process as shall be necessary to render its control effectual, setting forth, under oath, such a state of case as shows that the court or judge who made the decision, erred to their prejudice; and that they are entitled, by the case made before such inferior tribunal, to the relief which they seek." Here is a general idea as to the practice to be pursued, when applications are made to this court for the benefits of the writs which it is authorized to issue, by virtue of the powers conferred upon it by said section of the constitution. But, as the mode of proceeding, in its details under one writ, would not be a suitable or convenient practice, in proceedings under other of said writs, bearing in mind the general idea, the court must, necessarily, be left to adopt such practice as will best suit the exigencies of each particular case, considered with reference to the nature and character of the writ necessary to be used. The practice that would be suitable in a case of *habeas corpus,* would not be suitable in a case of *mandamus,* and this may be said with respect to the several writs authorized to be issued by this court under said section of the constitution.

This, we hold, is not only consistent with the general idea of the practice that may be pursued in such cases, as

indicated in the said case, *Ex parte Croom & May,* above referred to, but also with the case of *Ex parte Simonton et al.,* in 9 Porter, 383. In such cases, the party aggrieved by the action of an inferior court or judge may elect to proceed by appeal, under the said act of the 15th of December, 1868, or by the practice indicated by this court before the passage of said act. That act provides a cumulative remedy, but does not, and can not, prescribe the only practice to be pursued in this court. For these reasons, the said motion to dismiss the petition must be overruled.

2. I now proceed to the consideration of the return of the defendant, the said John T. Cook, the probate judge of Wilcox county, to the rule to show cause why a *mandamus* should not issue to compel him to approve of and file in his office, petitioner's official bond, as sheriff of said county of Wilcox. In such cases, the petition of the party at whose instance the rule to show cause is obtained, is treated as the complaint, in which the petitioner sets forth his title and the facts on which he claims a right to the relief sought by his application, and the defendant's return is treated as a plea, in which he must either deny the facts stated in the petition, on which the petitioner's claim to relief is founded, or it must state other facts sufficient in law to defeat the petitioner's application. And these facts must be stated positively, and distinctly, and with such certainty, that the court may be able to judge of them, and determine whether they form an excuse or justification sufficient in law, or not. This strictness is required, because the petitioner can not traverse the return. It must be taken to be true, and if false, the petitioner's remedy is an action for a false return.—Tapping, 353; Moses, 210. Every allegation of the return, therefore, must be direct, and be stated in the most unqualified manner, not inferentially or argumentatively, but with certainty and plainness.—*Commonwealth, ex rel. Thomas, v. The Comm'rs of Alleghany Co.,* 32 Penn. 218; Tapping, 354, 357.

The same certainty is required as that which governs estoppels, indictments, or returns to writs of *habeas corpus.* 32 Penn., *supra;* Tapping, 353. Every intendment is made

against a return to a *mandamus.*—Moses, 213; *The People v. Kilduff,* 15 Ill. Rep. 492; Tapping, 353.

A return to a *mandamus* need not be single, but may contain several defenses or justifications, consistent with each other; and if one be sufficient, the return must be allowed as to that one.—*Wright v. Fawcett,* 4 Burr. 2041; Moses, 214. Where, however, inconsistent causes for not obeying a *mandamus* are stated in the return, it must be quashed; for, taken as a whole, it is false.—Angell & Ames on Cor. 457. So, when two or more causes, returned to a *mandamus,* are inconsistent, the whole must be quashed, because the court can not know which to believe, and it is an objection to the whole return.—*The King v. The Mayor of Cambridge,* 2 T. R. 456, 458.

Guided and governed by these authorities, we feel constrained to declare the defendant's return in this behalf both uncertain and insufficient, and that the causes assigned for refusing to approve of petitioner's official bond, as sheriff of said county of Wilcox, are not only inconsistent, but also repugnant to each other, and can not stand together.

In the defendant's return, eleven different defenses are set up, eleven different causes assigned, to excuse or justify his refusal to approve of and file petitioner's official bond. I do not deem it necessary to discuss and dispose of each one separately. It will be enough to show their uncertainty and insufficiency, and to point out wherein they are inconsistent and repugnant to each other.

The first two causes assigned by the defendant do not, either of them, deny the statements of the petition, or set up any fact or facts amounting to any legal excuse or justification for defendant's refusal to approve of and file said bond.

In the first, petitioner's title is admitted. It is admitted he was duly elected sheriff of said county of Wilcox, on the 7th day of November, 1871, and that said election was duly certified to the governor, and that on the 22d day of said month *a bond* was tendered with security, in the penalty of forty thousand dollars, payable and conditioned

according to law, which securities defendant says were insufficient. This is neither an admission nor a denial that *the bond* made a part of the petition was not presented for defendant's approval, or that it was not in all respects such a bond as the law required petitioner to present for approval. This cause is, therefore, both uncertain and insufficient.

The second cause merely states that defendant refused to approve of the bond presented, because he (defendant) was, and still is, satisfied that the securities were insufficient. This is no averment that the securities were in fact insufficient, and is, therefore, worthless as a defense.

The third cause states his refusal was, because the securities on said bond, without showing who they were, did not, separately or in the aggregate, own property in their own right, and subject to legal process, to the amount of the penalty of said bond, excluding exemptions, without averring that said bond was the bond named in the petition, or that the said bond was in fact insufficient. This cause consists of mere generalities, without any of that directness and certainty required in such returns, as to enable this court to determine whether they form an excuse or justification effectual in law; besides, said cause is inconsistent with the matters stated in the eleventh part of said return.

The fourth, fifth, sixth and seventh causes, or defenses, may be grouped and considered together. They are somewhat varied in the manner of their statements, but neither of them presenting, with certainty and explicitly, any issuable facts; are evasive, containing no positive and plain statement of facts, showing any legal excuse or justification which the court can determine to be sufficient; resting mainly upon the ground that defendant was satisfied that the securities were insufficient; that they were not worth any thing over and above their debts and liabilities; that they were, as securities and principals, on official bonds and other legal bonds, given and executed within the limits of the State of Alabama, then outstanding, unsatisfied, undischarged, and in full force and effect, to the amount of

Ex parte Candee.

over one hundred thousand dollars, and that said securities were insufficient, &c. The said alleged bonds are neither set out nor described; not even the names of the persons for whom they are alleged to be bound, either as principal or sureties, are stated; nor when they were made, nor for what sums, nor to whom payable, is not stated. Which of said alleged bonds are individual bonds, and which official, is not known, nor for what officer or officers said bonds were given, is not disclosed. These vague matters, set up to excuse and justify the defendant, amount to mere bald statements, that said securities are on *somebody's bonds*, as principals or securities, and nothing more. If sued for a false return, how could its falsity be established, with the data here given? Or how could defendant be indicted for perjury, on such uncertain, indefinite, and undefinable statements? How could they be proved to be false? No argument is necessary to show that these several causes are utterly deficient in the plainness, directness and certainty of statement required in returns of this sort. Mr. Chitty says, a general statement of facts which admits of almost any proof to sustain it, is objectionable.—1 Ch. Pl. 232. Such is eminently the character of the statements in defendant's return. Even in ordinary pleading, the facts must be stated with such certainty, as that they may be understood by the party who is to answer them, by the jury who is to ascertain their truth, and by the court who is to give judgment.—1 Ch. Pl. 233.

The eighth cause assigned does not even pretend to set up any excuse or justification for refusing to approve of petitioner's bond, &c., but contains a mere statement, that when petitioner inquired of defendant in what amount his bond would be fixed, he told him it would be for $40,000; that petitioner said he was satisfied with it.

The ninth sets up the application of petitioner to Judge Harper, the circuit court judge, for a rule to said defendant, to show cause why a *mandamus* should not issue, &c., which application was refused, &c., and that no appeal was taken by petitioner. In considering the defendant's motion to dismiss the petition in this case, we have shown that said

proceeding presented no legal obstacle to the renewal of petitioner's application to this court.

The tenth cause states, that on petitioner's application to said Harper, circuit court judge, &c., after his refusal to grant the rule to show cause, &c., said Harper had fixed the amount of petitioner's bond as sheriff, &c., and had approved of the same, and on the 25th day of January, 1872, had issued a peremptory *mandamus* to defendant, commanding him to record and file said bond, and that defendant had appealed from said decision to this court, and that said appeal was pending in this court.

It is perfectly apparent that these proceedings were not the cause why defendant refused to approve of and file petitioner's bond, tendered to him for that purpose on the 22d day of November, 1871, more than two months before the alleged order for said peremptory *mandamus* is charged to have been made, and, therefore, is no legal answer to the rule to show cause, issued by this court. It is foreign and irrelevant to the proceeding.

The eleventh cause assigned in said return is as follows, to-wit: "Respondent, for further return to said alternative writ, says, that under the laws of the State of Alabama, as they stood on the 22d day of November, 1871, when said bond was presented to respondent for approval, this respondent was not the officer appointed by law *to fix and approve of* said bond of said Marshall G. Candee, as sheriff of said county of Wilcox."

We can but regard this as a mere false pretense on the part of the defendant. He had, in fact, fixed the amount of petitioner's bond at $40,000; had informed petitioner, on his inquiry, that securities on his bond, out of the county, would be required to make affidavits of justification, &c., and that petitioner would be required to obtain the certificate of the judge of probate, that he was personally acquainted with said securities, and believed them to be worth the amounts for which they had respectively justified, &c.; and when all this was complied with on the part of petitioner, and his bond was tendered for approval, defendant refused to approve of the same, without stating

the above as a reason for his refusal. All this is stated in petitioner's petition, and not denied, and besides, defendant's eighth cause of return states that he told petitioner the amount of his bond would be forty thousand dollars. Furthermore, this part of defendant's return is utterly inconsistent and repugnant to the other parts of said return. If this was the true reason for refusing to approve of and file petitioner's official bond, then all the others are false, and the whole return is bad, for the court can not know which to believe.—See *The King v. The Mayor of Cambridge*, 2 T. R., *supra*.

The entire complexion of this return has irresistibly drawn the mind of the court to the conclusion, that the real cause for refusing to approve of petitioner's bond is yet undisclosed; that defendant's refusal looks to some ulterior object or purpose, which is carefully kept from the knowledge of the court. However this may be, the return is bad for uncertainty, insufficiency and repugnancy. The petitioner's demurrer, therefore, must be sustained, and the return must be quashed. A judgment on demurrer in such cases is final, and not *respondeas ouster*, but a peremptory *mandamus* issues.—32 Penn., *supra*.

It is, therefore, the order and judgment of this court, that petitioner's demurrer to the return of the defendant be sustained, and that said return be quashed; and that a peremptory *mandamus* issue, commanding the said John T. Cook, probate judge of the county of Wilcox, without delay, to approve of and file in his office the official bond of petitioner as sheriff of said county, tendered to him for his approval on the 22d day of November, 1871, being the same bond made an exhibit to, and a part of petitioner's petition in this behalf.

It is also ordered, that said John T. Cook, probate judge, &c., as aforesaid, pay the costs of this proceeding in this court.